# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>KAY IVEY, in her official capacity as Governor of the State of Alabama,<br><br>　　　　　　Defendant. | Civil Action No. 2:24-cv-00104-RAH-JTA<br><br>**MOTION FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**<br><br>**(RELIEF REQUESTED BY MARCH 19, 2024)** |

　　　　Plaintiff American Alliance for Equal Rights moves pursuant to Fed. R. Civ. P. 65 for a temporary restraining order (TRO) and preliminary injunction (PI) requiring Defendant Kay Ivey, in her official capacity as Governor of the State of Alabama, to withdraw nominations to the Alabama Real Estate Appraisers Board (AREAB) that she recently sent to the Alabama Senate in an attempt to thwart this lawsuit. The Alliance requests a TRO before the Senate returns to session on March 19. That would allow the Court to maintain the status quo until the parties can fully brief and this Court can rule on the PI motion.

## INTRODUCTION AND STATEMENT OF FACTS

　　　　Alabama law requires the Governor to consider the race of potential board members when making appointments to AREAB, and to exclude from consideration anyone who will not satisfy AREAB's racial quota of at least two members "of a minority race." Ala. Code § 34-27A-4; *see also* Ala. Admin. Code 780-X-1-.02 (same). AREAB appointments are made by the Governor but are not final until confirmed by the Alabama Senate. The Alliance is a nationwide membership organization that is dedicated to eliminating racial distinctions and preferences in America, and it has members who are qualified, ready, willing, and able to be appointed to AREAB. Ex. D ¶¶ 4–

1

5.[1] One of these is Member A, a citizen of Alabama and member of the Alliance who has applied for the currently vacant public member position on AREAB and satisfies all the nonracial criteria but is ineligible because she is not a racial minority. Ex. E ¶¶ 3–7.

The Alliance filed this lawsuit on February 13, challenging AREAB's racial requirement as a violation of the Equal Protection Clause. ECF No. 1. The Governor was properly served on February 23. ECF No. 7. Although the Governor had made no appointments to AREAB for over three years, on February 29—less than a week after being served with Plaintiff's lawsuit—she suddenly sent nominations to the Senate purporting to appoint or reappoint all nine members of AREAB. *See* Ex. A (nomination letters); *see also* https://alison.legislature.state.al.us/confirmations?tab=1 (Senate website showing no other AREAB nominations since February 11, 2021). These nominations were introduced in the Senate and referred to its Confirmations committee on March 6, which was the first publicly available notice of the nominations.[2] No further action has taken place on the nominations, and the Senate is in recess until March 19, at which point it could act on the nominations. *See* https://alison.legislature.state.al.us/senate-session-reports?tab=2 (Senate calendar).

The Governor's rushed AREAB nominations were obviously a direct response to this lawsuit and a ploy to try to avoid Plaintiff's case being heard on the merits. This Court should decline to countenance such gamesmanship and should issue a TRO ordering the Governor to withdraw the nominations to preserve the status quo until the parties can fully brief and the Court rule on the Alliance's request for a preliminary injunction. This Court and other federal courts

---

[1] All exhibit cites refer to exhibits to the Roper declaration.

[2] The Alliance first learned of the nominations on March 7, when counsel for the Governor sent an email to counsel for the Alliance stating: "my understanding is that … the Governor has recently made appointments to those positions." Ex. B.

readily grant preliminary relief against Governors where necessary to preserve the status quo and prevent the violation of constitutional rights. *See, e.g.*, *Lee v. Macon Cnty. Bd. of Educ.*, 231 F. Supp. 743, 745 (M.D. Ala. 1964) (TRO granted to prevent Alabama Governor from interfering with school desegregation); *State of Ala. ex rel. Flowers v. Kelley*, 214 F. Supp. 745, 746 (M.D. Ala. 1963) (TRO granted to prevent Alabama Governor from acting on lease agreement); *United States v. Barnett*, 376 U.S. 681, 685–86 (1964) (TRO granted to prevent Mississippi Governor from interfering with desegregation); *see also Allman v. Padilla*, 979 F. Supp. 2d 205, 209 (D.P.R. 2013) (TRO granted ordering Governor to withdraw nomination prior to Senate approval); *Torres-Rivera v. Garcia-Padilla*, No. CV 14-1040 (FAB), 2014 WL 12788784, at *3 (D.P.R. Jan. 17, 2014) (TRO granted ordering Governor to withdraw appointment pending a decision on preliminary injunction motion).[3]

The Court should not hesitate to grant preliminary relief here, as all four elements for obtaining such relief are satisfied.[4]

## LEGAL STANDARD

The purpose of a temporary restraining order "is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005) (per curiam). "To be entitled to

---

[3] *See also, e.g.*, *Friends of George's, Inc. v. Tennessee*, 667 F. Supp. 3d 755, 766 (W.D. Tenn. 2023) (granting TRO against Tennessee Governor's enforcement of a statute that would violate the plaintiff's First Amendment rights); *Disability Rights S.C. v. McMaster*, No. CV 3:21-02728-MGL, 2021 WL 5054087, at *1 (D.S.C. Nov. 1, 2021) (TRO granted against South Carolina Governor's enforcement of COVID restrictions); *Quiles Rodriguez v. Calderon*, 172 F. Supp. 2d 334, 338 (D.P.R. 2001) (noting grant of a TRO preventing the Puerto Rico Governor from appointing a Chair of the Public Service Commission).

[4] Alternatively, the Court should order the Senate to stay consideration of the nominations until the Court can rule on the PI motion.

a TRO, a movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995). The third and fourth factors "merge" when "the Government is the opposing party." *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

These same four factors apply to a request for a preliminary injunction. *See Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023).

## ARGUMENT

As shown below, each of the four preliminary relief factors is satisfied here, and the requested TRO should issue to preserve the status quo until this Court can rule on the Alliance's request for a PI.

### I. The Alliance Is Substantially Likely to Prevail on the Merits

The Alliance is likely to succeed in proving that Alabama's race-based appointment preference for AREAB violates the Equal Protection Clause. The "core purpose" of the Equal Protection Clause is "do[ing] away with all governmentally imposed discrimination based on race." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)). For that reason, "[e]liminating racial discrimination means eliminating all of it." *Id*. Both Section 34-27A-4 and Rule 780-X-1-.02 require the Governor to consider race when making appointments to AREAB. As such, they must survive strict scrutiny. *Id.*

Strict scrutiny is a "daunting two-step examination," *id.*, in which the government has the burden of proving that a racial classification both (1) furthers a compelling governmental interest, and (2) is narrowly tailored to further that interest, *Johnson v. California*, 543 U.S. 499, 505 (2005) (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)). "Both the Supreme Court

4

and [Eleventh Circuit] have made clear that racial classifications, whatever the motivation for enacting them, are highly suspect and rarely withstand constitutional scrutiny." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001).

The Alliance is likely to succeed in proving that the racial requirement for appointments to AREAB fails both prongs of strict scrutiny.

### A. AREAB's Racial Requirement Does Not Further a Compelling Interest

The compelling interest requirement is designed to "assur[e] that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool." *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1564–65 (11th Cir. 1994) (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989) (plurality op.)). The Supreme Court has recognized only one relevant interest compelling enough to justify racial classifications: remedying the effects of the government's own past or present de jure discrimination. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720–22 (2007); *see also Ensley*, 31 F.3d at 1577 ("The Constitution tolerates race-based remedies only when they are necessary either to remedy past discrimination or to correct present discrimination ....").[5] To establish a compelling interest in remedying the effects of de jure discrimination, defendants cannot simply rely on an "amorphous claim," but must set forth "a strong basis in evidence for their conclusion that race-based affirmative action is necessary." *Ensley*, 31 F.3d at 1552, 1565.

The Governor cannot make such a showing here because there is no history of discrimination in appointments to AREAB. The racial preference in Section 34-27A-4 was part of the law from the creation of AREAB, meaning that AREAB has never been without the

---

[5] The Supreme Court has also discussed "avoiding imminent and serious risks to human safety in prisons" as a compelling interest, *Students for Fair Admissions*, 600 U.S. at 207, but that is plainly inapplicable here.

requirement that at least two members be "of a minority race." *See* Real Estate Appraisers Act, 1990 Alabama Laws Act 90-639. Even if the Governor were to argue that there has been past discrimination in the real estate industry in Alabama generally, that would be insufficient, as "a generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy." *Croson*, 488 U.S. at 498; *see also Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996) ("[A]n effort to alleviate the effects of societal discrimination is not a compelling interest."); *Ensley*, 31 F.3d at 1552, 1565 (an "'amorphous claim' of societal discrimination" is insufficient).

### B. AREAB's Racial Requirements Are Not Narrowly Tailored

Even if there were a compelling interest that could justify racial considerations in AREAB appointments, any such considerations must be narrowly tailored to ensure that the use of racial preferences is a "last resort." *Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade Cnty.*, 122 F.3d 895, 926 (11th Cir. 1997). The narrow tailoring inquiry "must be intrusive, and focused very closely and in a very precise way on the specific terms of the regulation or policy under review, because only with that kind of searching examination can a court ensure that the defendant's use of race is truly as narrow as the Constitution requires." *Johnson*, 263 F.3d at 1251. A "searching examination" shows that AREAB's racial requirement is not narrowly tailored in at least four ways.

First, the rigid and categorical nature of the racial requirement shows that it is not narrowly tailored. *See Johnson*, 263 F.3d at 1255 (finding no narrow tailoring where the government used a "rigid, mechanical approach to considering race"). The challenged statute and rule require that there must always be at least two racial minorities on AREAB. Thus, an opening on the board *must* be filled by a racial minority if there are fewer than two racial minorities already on AREAB.

Second, the "random inclusion of racial groups" for which there is no evidence of past discrimination demonstrates that a program is not narrowly tailored. *See Croson*, 488 U.S. at 506. Even if there were evidence of alleged instances of race discrimination against some racial minorities, Alabama gives preferential treatment in AREAB appointments to *every* racial minority—in other words, anyone who is not white or Caucasian. This "suggests"—if not conclusively establishes—that Alabama's purpose in creating the racial requirement "was not in fact to remedy past discrimination" against members of an identified group. *Croson*, 488 U.S. at 506.

Third, the narrow tailoring analysis requires Alabama to engage in "serious, good faith consideration of workable race-neutral alternatives" that would allow it to achieve whatever interest it believes to be compelling. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). This will ordinarily involve proof that the legislature "carefully examined and rejected race-neutral alternatives." *Croson*, 488 U.S. at 507. Yet here, there is no indication that Alabama considered any race-neutral alternatives before selecting a blanket policy of requiring at least two racial minorities on AREAB. *See Virdi v. DeKalb Cnty. Sch. Dist.*, 135 F. App'x 262, 268 (11th Cir. 2005) (finding no narrow tailoring where "there is no evidence that the District considered race-neutral alternative means"); *Johnson*, 263 F.3d at 1259 (concluding that the defendant "fails to show on this record that it meaningfully considered, let alone rejected as insufficient, any wholly race-neutral alternatives to the [challenged] race-conscious admissions policy").

Fourth, racially conscious government programs must have a "logical end point." *Students for Fair Admissions*, 600 U.S. at 212 (quoting *Grutter*, 539 U.S. at 342). This requirement is "critical" because "'deviation from the norm of equal treatment' must be 'a temporary matter.'" *Id.* (quoting *Grutter*, 539 U.S. at 342). Here, AREAB's race-based appointment preference is

7

perpetual, as neither the statute nor the rule have an expiration date. Instead, Alabama appears "committed ... to using race" until "it is precluded from doing so." *Johnson*, 263 F.3d at 1259.

Since the Governor cannot demonstrate a compelling government interest and Alabama has not precisely tailored AREAB's race-based appointment preferences, the Alliance is likely to prevail on its equal protection claim.

## II. The Alliance and Its Members Will Suffer Irreparable Harm

An injury is irreparable when it "cannot be undone through monetary remedies." *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983); *see also United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1358 (11th Cir. 2019) (explaining that when it is unlikely that a plaintiff will be able to recover money damages, his injury is irreparable). The deprivation of constitutional rights "unquestionably constitutes irreparable harm." *Strawser v. Strange*, 105 F. Supp. 3d 1323, 1328 (S.D. Ala. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Here, the Alliance and its members will be irreparably harmed absent preliminary relief. Most notably, Member A will be deprived of her fundamental right under the Equal Protection Clause to equal consideration in her application for a position on AREAB. *See Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (holding that the injury-in-fact in a case involving racial discrimination is "the inability to compete on an equal footing"). The Governor made her recent rushed nominations under a system that discriminates against Member A based on her race, such that Member A did not receive equal consideration. Without a TRO, the Alabama Senate will likely consider and confirm the Governor's nominations soon after it returns to session on March 19. And because positions on AREAB are for three-year terms, if the Governor's nominations are confirmed, it will likely be several years before Member

A or other Alliance members can be considered for a vacancy on AREAB.[6] Absent preliminary relief, Member A will be irreparably deprived of equal consideration for the currently vacant public member seat on AREAB, free from discrimination based on her race. And no monetary remedies are available to compensate for this constitutional violation. *See Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (in the context of preliminary relief, "numerous courts have held that the inability to recover monetary damages … renders the harm suffered irreparable"). A TRO is necessary to preserve the status quo and avoid irreparable harm to Member A and the Alliance until the Court can rule on the PI motion.

### III. The Balance of Equities Tips in the Alliance's Favor and a TRO and PI Are in the Public Interest

The irreparable harm that the Alliance and its members will suffer without preliminary relief outweighs any harm that such relief would cause the Governor, for three reasons. First, when a constitutional right hangs in the balance, that usually trumps harm to government defendants. *See Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1272 (11th Cir. 2020) (loss of the right to vote outweighed the government's asserted harms); *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1206 (S.D. Fla. 2020) ("irreparable harm to [plaintiffs'] constitutional rights" outweighs asserted government interests).

Second, the Governor cannot show that preliminary relief would cause her any direct harm, since it would simply halt the confirmation of AREAB members who were nominated pursuant to a racially discriminatory process. There is no urgency to appoint AREAB members, and the Governor has not seen a need to make any appointments to AREAB for the past three years. The

---

[6] Some of the Governor's AREAB nominations purport to have set expiration dates in 2026; others purport to expire "three years after … confirmation by the Senate." *See* Ex. A.

9

additional time it will take to receive a ruling in this case will not cause any measurable harm to the Governor or AREAB.

Third, enjoining the Governor's recent nominations will not harm AREAB's ability to conduct regular business, as the current members "continue to hold office until the appointment and qualifications of their successors and confirmation by the state Senate." Ala. Code 34-27A-4. The AREAB as currently constituted continues to hold meetings and conduct its business. *See* Ex. C (AREAB meeting minutes from November 9, 2023, the latest available on AREAB's website); https://reab.alabama.gov/about/meeting-dates-reports (listing AREAB's scheduled meetings through the end of 2024).

The Alliance is not asking the Court to appoint Member A or another of its members to AREAB. It is simply asking that the Governor be required to make her appointments on a race-neutral basis. Doing so in conformity with the Equal Protection Clause is in the public interest, because "the public interest is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019). Indeed, "the public ... has no interest in enforcing an unconstitutional law." *Scott v. Roberts*, 612 F.3d 1279, 1297 (11th Cir. 2010).

Additionally, the equities particularly favor the Alliance here because the Governor's nominations were not made in the regular course, but were rushed to the Senate in response to this lawsuit. The Court should not reward the Governor's thinly veiled attempt to disrupt this case and deprive the Court of jurisdiction to consider the Alliance's claims. Instead, it should issue a TRO to preserve the status quo until it can rule on the Alliance's PI motion.

### IV.    No Security Should Be Required

This Court has discretion to determine the amount of any security under Rule 65(c), and it is "well-established" that it "may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quoting *City of*

*Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981)). Not requiring security is particularly appropriate in "[p]ublic-interest litigation" such as this case. *Sierra Club v. Kempthorne*, No. CV 07-0216-WS-M, 2007 WL 9717745, at *6 (S.D. Ala. May 31, 2007) (citing *Metro. Atlanta Rapid Transit Auth.*, 636 F.2d at 1094). Here, vindicating the equal protection rights of the Alliance and its members is strongly in the public interest. The Governor and AREAB will not be harmed by preliminary relief, and there is no need for a bond or other security.

## CONCLUSION

For the foregoing reasons, the Court should grant a TRO and require the Governor to withdraw her recent nominations to AREAB prior to the Senate resuming on March 19. That would preserve the status quo, enabling the parties to brief and this Court to rule on the PI motion.[7]

DATED: March 11, 2024.

Respectfully submitted,

/s/ Glenn E. Roper
GLENN E. ROPER*
Colo. Bar No. 38723
Pacific Legal Foundation
1745 Shea Center Drive, Suite 400
Highlands Ranch, Colorado 80129
Telephone: (916) 503-9045
GERoper@pacificlegal.org
*Pro Hac Vice*

*Attorney for Plaintiff*

---

[7] Alternatively, in granting the TRO the Court should direct the Senate to stay any action on the recent AREAB nominations. As to either alternative, if the Court grants a TRO, the Alliance respectfully requests that a copy of the Court's order be sent to the Clerk, Chairperson, and Ranking Minority Member of the Senate's Confirmations Committee, as well as the Senate President. *See* https://alison.legislature.state.al.us/committees-senate-standing-current-year; https://alison.legislature.state.al.us/senate-leaders-members.

11

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record:

Brenton Merrill Smith at Brenton.Smith@AlabamaAG.gov.

Benjamin M. Seiss at Ben.Seiss@AlabamaAG.gov

                                                /s/ Glenn E. Roper
                                                GLENN E. ROPER
                                                *Attorney for Plaintiff*