**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, *a nonprofit corporation*, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) Civil Action No.: ) 2:24-cv-00104-RAH-JTA |
| KAY IVEY, *in her official capacity as Governor of the State of Alabama*, | ) ) ) ) |
| *Defendant*. | ) ) |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

**I.    INTRODUCTION**

Plaintiff American Alliance for Equal Rights (AAER) is mistaken about several significant facts. Most importantly, every position on the State of Alabama Real Estate Appraisers Board was up for appointment, and race was not a required consideration with respect to the public member position that AAER's member sought. While the public member position has been vacant for years, the regular terms of every Board member have also been expired for some time (with those members continuing to serve as holdovers pursuant to Alabama law until the confirmation of their successors). Indeed, Governor Ivey made appointments to every position on the Board in June of last year (seven of which have now been reappointed), but those appointments were not acted upon by the Senate before the Legislature adjourned *sine die*. So, contrary to AAER's accusations, these appointments were not the product of "gamesmanship."

To be clear, AAER is correct that the express requirement that "no less than two of the nine board members shall be of a minority race," ALA. CODE § 34-27A-4, is an unconstitutional racial quota. But that doesn't mean AAER is entitled to injunctive relief (or that this Court has

1

jurisdiction to grant it in the first place). As explained further below, Defendant had already appointed two minority members to the Board before she appointed someone to fill the public member position; therefore, the challenged statute did not require Defendant to consider race when making that appointment. AAER thus lacks standing to seek the relief it requests (as does its anonymous member), its injury is not irreparable as demonstrated by its delay in seeking preliminary injunctive relief, and the equities certainly do not weigh in its favor. Accordingly, its motion for a temporary restraining order or preliminary injunction is due to be denied.

## II.   LEGAL STANDARD

"A preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1224 (11th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008)), *vacated as moot,* 20 F.4th 1385. "Indeed, the grant of a preliminary injunction is 'the exception rather than the rule.'" *Brown*, 4 F.4th at 1224 (quoting *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)). Thus, "[t]he preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites. The burden of persuasion in all of the four requirements is at all times upon the plaintiff." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1286 (11th Cir. 1990) (quoting *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983)) (internal quotations omitted).

To that end, a plaintiff must demonstrate that "the evidence establishes" that each of the four elements are met. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995); *see also New Vision Eye Ctr. v. Fla. Eye Inst., PA*, No. 09-14441-CIV-MOORE/SIMONTON, 2010 WL 11602458, at *2 (S.D. Fla. Mar. 23, 2010) ("A motion for preliminary injunction must be supported by evidence; a party is not entitled to preliminary injunctive relief 'solely on the basis of its naked allegations.'" (quoting *Church of Scientology*

2

*Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 608 (11th Cir. 1985))).

Those four elements a movant must show are: "(1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable harm without a preliminary injunction; (3) that the threatened injury to the party outweighs any harm that might result to the defendants; and (4) that an injunction is not adverse to the public interest." *Brown*, 4 F.4th at 1224. However, where a preliminary injunction involves a government entity, "'its interest and harm merge with the public interest,' so [a court] may consider the third and fourth factors together." *Id.* (quoting *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020)).

Where, as here, a preliminary injunction is sought to *change* the status quo and force another party to act, it becomes a "mandatory or affirmative injunction" and the burden on the moving party increases. *Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).[1] Thus, a mandatory injunction "'should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party.'" *Id.* (quoting *Miami Beach Fed. Sav. & Loan Ass'n v. Callander*, 256 F.2d 410, 415 (5th Cir. 1958)); *see also Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). Moreover, "preliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit held that the decisions of the Fifth Circuit handed down by the close of business on September 30, 1981, constitute binding precedent for the Eleventh Circuit.

Constitution and by the other strict legal and equitable principles that restrain courts." *Ne. Fla. Chapter*, 896 F.2d at 1285.

Courts must consider threshold jurisdictional questions before proceeding to the merits of a preliminary injunction request. *See Fla. Family Pol'y Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009). Once a party moves for a preliminary injunction, courts need no longer defer to the complaint's allegations, including for purposes of subject-matter jurisdiction. *See id.* "[I]n determining subject matter jurisdiction, [a court is] permitted to look at all of the evidence presented, including affidavits and testimony relating to a motion for a preliminary injunction." *Id.* (vacating the district court's dismissal for failure to state a claim and after considering evidence presented as part of preliminary injunction request, remanding with instructions to dismiss for lack of subject-matter jurisdiction).[2]

### III. BACKGROUND

The State of Alabama Real Estate Appraisers Board exists to protect the public "against dangers arising from attempts of incompetent or unscrupulous persons to practice the profession of real estate appraisal." ALA. ADMIN. CODE r. 780-X-1.01; *see* ALA. CODE §§ 34-27A-1 to -63. The Board carries out its mission by licensing those engaged in the practice, "establishing boundaries on the action of appraisal management companies to maintain appraiser

---

[2] Nor should AAER's lack of understanding of the true facts on the ground permit it to prejudice Defendant by presenting entirely new, non-rebuttal arguments or evidence in its reply brief due Sunday. Defendant preemptively objects to such. *See Herring v. Sec'y, Dept. of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (noting that arguments presented for the first time on reply are not properly before the court); *see also Braxter v. Dolgencorp, LLC*, — F. Supp. 3d—. No. 2:20-cv-638-ECM, 2023 WL 6377296, at *6 n.6 (M.D. Ala. Sept. 29, 2023) ("However, 'where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond.'" (quoting *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 901 (11th Cir. 2019)). Such new arguments or evidence would unduly prejudice Defendant by leaving her as few as nine—mostly overnight—hours to read (let alone respond to) them before the Monday hearing at 9:00 A.M.

independence," and pursuing "swift and effective discipline" for those who violate the law. ALA. ADMIN. CODE r. 780-X-1.01.

The Board consists of nine members—seven licensed appraisers (one from each congressional district), one "representative of an appraisal management company," and "one qualified individual from the general public." ALA. CODE § 34-27A-4. All members of the Board, except the appraisal management company representative, must be citizens of Alabama. *Id.* Neither the public member nor their spouse can "engage[] in the practice of real property appraising." *Id.* And "no less than two of the nine board members shall be of a minority race." *Id.* "The overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state." *Id.*

The Governor appoints members to the Board, subject to Senate confirmation. ALA. CODE § 34-27A-4. Their regular terms are three years; however, members may hold their seats "until the appointment and qualifications of their successors and confirmation by the state Senate." *Id.* The regular terms of every member of the Board expired (at the latest) in May 2023. Doc. 18-1 at 2; *Alabama Real Estate Appraisers Board*, ALA. SEC'Y OF STATE, https://www.boards.alabama.gov/entityReport/view/100259 (last visited Mar. 14, 2024). Some terms expired as early as 2019 (with those members having first been appointed in 2014), and the public member position has been vacant since its previous holder, Patrice McClammy, was elected to the Alabama House of Representatives in November 2021. *Id.*; *see also* Doc. 1 ¶ 18. Thus, although the public member position was the only seat *vacant* on the Board, all members' regular terms had expired and thus each position was eligible for gubernatorial appointment.

Accordingly, Defendant made appointments to all nine positions on the Board on June 1, 2023. *See* Doc. 18-3. Defendant appointed Chad E. Anderson for Congressional District 1, Randall

5

Kyles for Congressional District 2, Melanie Housh for Congressional District 3, Mark Haller for Congressional District 4, Mark Palmer for Congressional District 5, J. Roger Ball, Jr. for Congressional District 6, William Mackey for Congressional District 7, Pam O'Brien as the representative of the appraisal management companies, and Tim Mills as the representative for the general public. *Id.* However, the Legislature adjourned *sine die* shortly after these appointments were made and thus the Senate did not act on them.

In February 2024, Defendant—again—made nine appointments to the Board. Doc. 18-4. On February 21, 2024, Defendant made five appointments: Randall Kyles for Congressional District 1, Chad E. Anderson for Congressional District 2, Mark Palmer for Congressional District 4, Andreas Smith for Congressional District 5, and Andrew D. Watson as the representative of the appraisal management companies. *Id.* at 2-6. On February 28, 2024, Defendant made appointments to the remaining four positions: Melanie Housh for Congressional District 3, J. Roger Ball, Jr. for Congressional District 6, William Mackey for Congressional District 7, and Tim Mills as the representative for the general public. *Id.* at 6-10. Although seven of the nine members had also been appointed in 2023, subsequent changes in congressional district lines required some changes.[3] Of the 2024 appointees, the materials they submitted to the Governor's Office for consideration reflect that three are "of a minority race": Mr. Kyles, Mr. Smith, and Mr. Mills. Doc. 18-4 at 2, 22, 65.

---

[3] Specifically, Mr. Kyles was now appointed to District 1 rather than District 2; Mr. Anderson was now appointed to District 2 rather than District 1; Mr. Smith replaced Mr. Palmer (who no longer lived in District 5). Unrelatedly, Mr. Watson replaced Ms. O'Brien as the appointee for the appraisal management company representative position.

## IV. ARGUMENT

### A. This Court lacks subject-matter jurisdiction to order AAER's requested relief.

AAER requests two alternative forms of preliminary relief.[4] Its primarily asks this Court to "grant a TRO and require the Governor to withdraw her recent nominations to AREAB prior to the Senate resuming on March 19." Doc. 11 at 11.[5] But it alternatively asks this Court to "direct the Senate to stay any action on the recent AREAB nominations." *Id.* at 11 n.7. This Court lacks jurisdiction to order all this relief for three reasons. *First*, this Court cannot order relief against the Senate (a non-party that is plainly immune). *Second*, AAER's generalized grievance with appointments to the eight non-public positions is insufficient to support standing. And *third*, AAER lacks standing to challenge even the public member position because Member A (and thus AAER) did not suffer racial discrimination.

### 1. AAER cannot pursue relief against the Senate—an immune non-party.

To prove standing, a plaintiff must show three elements: (1) injury in fact, (2) traceability, and (3) redressability. *Exhibitors Poster Exch.*, 441 F.2d at 560-61. "Standing is not dispensed in gross"; "at least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (citations omitted) (cleaned up). AAER cannot satisfy these requirements as to its request that this Court direct the Senate to stay consideration of the nominations. AAER named Governor Ivey in her official capacity as the *only* defendant in this case. Doc. 1 ¶ 9. Thus, to satisfy the redressability element, AAER must be able to show that "*the effect of the court's judgment*" on Governor Ivey (and not on "an absent

---

[4] That AAER now seeks wholly different relief (an order requiring either Defendant to withdraw all nominations or directing the Senate to stay consideration of the nominations, Doc. 11 at 11, n.7) as opposed to the relief sought in the complaint (an order preventing Defendant from enforcing the racial quota in Ala. Code § 34-27A-4) suggests that preliminary relief is inappropriate. *See Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 322915, at *6-8 (M.D. Ala. July 28, 2017).

[5] It's not clear that this Court can order Defendant to undo a one-time exercise of discretionary authority (as opposed to ordering her to fulfill a mandatory duty or enjoining her from enforcing an unconstitutional statute).

third party") would provide the relief that would redress AAER's alleged injury. *Lewis v. Governor of Ala.*, 944 F.3d 1287 (11th Cir. 2019) (en banc) (citation omitted). Because Defendant lacks any authority to "stay" the Senate's consideration of the nominations, ALA. CONST. art. III, § 42 ("the executive branch may not exercise the legislative or judicial power"), ordering her to stay the Senate's consideration could not redress AAER's alleged injury.

Ordering relief against the Senate presents other jurisdictional issues. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The Senate was never served—which is unsurprising given that it wasn't named as a defendant—thus, this Court lacks personal jurisdiction over it. And "[a] court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (citation omitted). Even if AAER had named the Senate as a defendant and served it, *the Alabama State Senate* enjoys absolute immunity under the Eleventh Amendment. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986) (recognizing that a suit against "the State or one of its agencies or departments . . . is proscribed by the Eleventh Amendment. . . . whether the relief sought is legal or equitable"); *see also Nichols v. Ala. State Bar*, 815 F.3d 726, 733 (11th Cir. 2016). Whether for standing, personal jurisdiction, or immunity reasons, this Court cannot grant AAER's requested relief as to the Senate.

    2. *AAER lacks standing to obtain relief as to the eight non-public positions.*

AAER only "has one or more members who are . . . qualified . . . to be appointed as *public* members of AREAB[.]" Doc. 1 ¶ 20. Because AAER has failed to allege that any of its members suffered racial discrimination during the appointment process to the non-public positions, *see* Doc. 11 at 8, it plainly lacks an injury in fact as to those eight positions. An injury in fact must be both

8

"concrete and particularized" and "actual or imminent." *Lewis*, 944 F.3d at 1296 (citation omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 n.1 (1992).

AAER merely has a generalized grievance as to the eight non-public positions, which is insufficient to satisfy Article III. A "generalized grievance" is one that is "plainly undifferentiated and common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 440-41 (2007) (cleaned up). And there is a "lengthy pedigree" of federal courts "refus[ing] to serve as a forum for generalized grievances." *Id.* at 439. AAER exists as a vehicle to substantiate its generalized grievance against "racial distinctions and preferences in America." *See* Doc. 1 ¶ 8. But because it has neither alleged in its complaint nor substantiated in its motion or supporting materials that any of its members are even eligible for appointment to those eight positions, it lacks standing to seek relief regarding them.

AAER's counsel conceded as much at the March 12, 2024 status conference. His response to the Court's question raising this issue was concern about how the Senate confirming appointments to the other eight positions, which include two minorities, would impact the lawsuit. In other words, AAER's counsel was concerned that Defendant would argue that Ala. Code § 34-27A-4 was already satisfied by the confirmation of two minority candidates to appraiser positions, and thus, the statute would have no bearing on the public member position. This concern is unfounded because the argument already applies: Defendant appointed two minority candidates the week before she appointed Mr. Mills to the public member position. More importantly, that's not how jurisdiction works. AAER isn't entitled to a TRO over matters it lacks jurisdiction to challenge because those matters make its already jurisdictionally deficient lawsuit even more

9

jurisdictionally deficient. Thus, given AAER's own framing of this case, this Court lacks jurisdiction to grant AAER's requested relief as to the eight non-public positions.

### 3. *Member A has not been injured and is unlikely to suffer the alleged injury in the future.*

AAER's remaining avenue to satisfy Article III's jurisdictional requirement is to establish associational standing by piggybacking on Member A's standing. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) ("[A]n association has standing to bring suit on behalf of its members when[,]" *inter alia*, "its members would otherwise have standing to sue in their own right[.]"). But Member A's alleged injury (and thus standing to bring this lawsuit) depends entirely on a misframing of the facts. As AAER tells it, there is only one open position on the Board, and because "[t]here are currently fewer than two racial minorities on AREAB[,]" Doc. 1 ¶ 18-19, Defendant must consider Member A's race in filling the vacancy. As Member A "is not a racial minority[,]" Doc. 11 at 2, the claimed injury is that she "did not receive equal consideration," *id.* at 8.

But Member A's (and thereby AAER's) injury never happened. All nine of the Board's positions were eligible for appointment because they were either vacant or filled by a holdover appointee with an expired term. *See* Doc. 18-1 at 2. Indeed, Defendant made appointments or re-appointments to *all nine* positions. Doc. 11 at 2; Doc. 11-2; Doc. 18-4. Defendant was not forced to consider the race of the appointee to the public member spot. By the time Mr. Mills had been appointed to the public member position on February 28, 2024, *id.* at 10; Doc. 11-2 at 10, two minority members (Mr. Kyles and Mr. Smith) had already been appointed to other positions on February 21, 2024. *Compare* Doc. 18-4 at 2, 5, *with* Doc. 18-5 at 2, 22 (Kyles's and Smith's applications listing their ethnicity as "Black" and "African-American," respectively). Thus, Defendant was not required to consider Member A's race when she decided to appoint Mr. Mills to the public member position. When considering the appointment process in its full and proper

10

context, AAER has not marshaled any evidence demonstrating that Member A received unequal consideration for the public member position due to her race.

"The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). Not only must AAER show past injury; "[b]ecause injunctions regulate future conduct," it must also "show a sufficient likelihood that [it] will be affected by the allegedly unlawful conduct in the future." *Id.* at 1328-29 (quoting *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)) (quotation marks omitted). "[A] party has standing to seek injunctive relief only if the party shows a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Id.* (internal quotation marks and citation omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

AAER cannot show a "real and immediate" threat of future injury or "continuing, present adverse effects." Quite the opposite: AAER recognizes that "if the Governor's nominations are confirmed, it will likely be several years before Member A or other Alliance members can be considered for a vacancy on AREAB." Doc. 11 at 8-9 (footnote omitted). To the extent that AAER's injury ever existed (it didn't), the injury started and ended with Defendant's appointment process, which has concluded. Given Defendant's appointment of Mr. Mills to the position, the threat of future injury could only exist if Defendant makes another appointment to position. But assuming the Senate confirms Mr. Mills, that threat could not occur until at least March 26, 2026, Doc. 18-4 at 10—that's not "immediate." Nor is the threat of sooner injury "real" because there's no reason to believe that Mr. Mills won't get confirmed. And again, if two minority members

11

already hold seats on the Board at the time Defendant makes the appointment, Member A or other AAER members would get the same consideration that minority candidates get (and the same consideration that Member A was given with this appointment). AAER thus lacks standing to obtain prospective injunctive relief. AAER cannot establish associational standing because Member A was never injured and is unlikely to suffer the alleged injury in the future. [6]

\* \* \*

Through a plethora of jurisdictional deficiencies, AAER cannot obtain either form of relief that it requests.

## B. Section 34-27A-4's express requirement that two minority members be appointed to the Board is an unconstitutional racial quota, but the general diversity language poses no such constitutional issue.

The Constitution does not permit a law requiring that at least two of the Board's members to be minorities. Supreme Court precedent makes clear that a racial quota on a government board cannot satisfy strict scrutiny and therefore violates the Equal Protection Clause—no matter how well-intentioned the law might be. *See Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 226 (2023) (The Court has "long rejected" the view "that the Fourteenth Amendment permits state actors to remedy the effects of societal discrimination through explicitly race-based measures."). "Eliminating racial discrimination means eliminating all of it[,]" *id.* at 206, including discrimination meant to benefit racial minorities, *id.* at 246-47

---

[6] Of course, because Member A's declaration is due to be stricken, *see* Doc. 19, AAER has not—as required at the preliminary-injunction stage—presented admissible evidence to support standing. Regardless, even if the declaration was not stricken, an anonymous declaration is still insufficient to support standing at this stage—AAER must identify Member A by name, *see, e.g.*, *Do No Harm v. Pfizer, Inc.*, No. 23-15, 2024 WL 949506 (2d Cir. Mar. 6, 2024). The Eleventh Circuit recently heard oral argument in a similar case addressing the issue, which AAER should be quite aware of, *see AAER v. Fearless Fund Mgmt.*, No. 23013138, 2023 WL 6520763, at *2 n.1 (11th Cir. Sept. 30, 2023) (Wilson, J., dissenting from the order granting an injunction pending appeal) (expressing skepticism that AAER has standing (citing *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018))). Additionally, Defendant preserves the argument that Member A must be identified by name even in the complaint—not just at the preliminary-injunction stage or later stages of the case. *See Cal. Rest. Assoc. v. City of Berkeley*, 89 F.4th 1094, 1116 n.5 (9th Cir. 2024) (Baker, J., concurring) (collecting cases and cataloguing a circuit split).

12

(Thomas, J., concurring) (stating that the theory "that the Amendment forbids only laws that hurt, but not help, blacks . . . lacks any basis in the original meaning of the Fourteenth Amendment"). Thus, § 34-27A-4's racial quota—requiring "no less than two of the nine board members [to] be of a minority race"—violates the Fourteenth Amendment.

But AAER has failed to show that § 34-27A-4's general diversity language is unconstitutional. That language provides that "[t]he overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state." It is not apparent from either the complaint or the TRO motion that AAER directly challenges this language. During the March 12, 2024 status conference, AAER's counsel stated that AAER challenges the general diversity language to the extent it operates as a quota. But because AAER hasn't attempted to show that the general diversity language as it generally applies is unconstitutional, AAER is unlikely to succeed on the merits as to the general diversity language. And though AAER has not attempted to prove that the general diversity language operates as a quota, such language would be unconstitutional *if* it operated as a quota.

But the plain text of the general diversity provision neither references a quota nor operates as such. Instead, it appears to serve no "more than a hortative function[,]" *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1570 (11th Cir. 1994), that the Board "reflect the racial, gender, geographic, urban/rural, and economic diversity of the state"—something the Board is already likely to do because members "shall be appointed from each United States Congressional District in this state[,]" ALA. CODE § 34-27A-4. There is thus no reason to think that such amorphous language operates as a quota or even a "plus" for any candidate. If, for example, the quota provision was not present in the statute and a minority candidate was not selected for the Board, it is hard to imagine an Alabama court entertaining the claim that the Governor had violated

13

Alabama law by not making the Board sufficiently reflective of the State's varying degrees of diversity. There would be "a lack of judicially discoverable and manageable standards for resolving" the hypothetical case. *Belser v. Blount County*, —So. 3d—, No. SC-2023-0421, 2023 WL 8857183, at *6 (Ala. Dec. 22, 2023) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

Principles of statutory interpretation accord with this reading. The surplusage canon counsels against reading the general diversity language to be a quota because doing so would "needlessly" give it "an interpretation that causes it to duplicate [the quota] provision [and cause it] to have no consequence." *In re Appling*, 848 F.3d 953, 959 (11th Cir. 2017) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012)). And though the doctrine of constitutional avoidance need not come into play because the general diversity language isn't ambiguous as to this issue, it too supports not interpreting the language to be a quota. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).[7]

In sum, AAER is correct that the express requirement that "no less than two of the nine board members shall be of a minority race" is unconstitutional; however, they are not likely to succeed on the merits to the extent they challenge the other general diversity language found in § 34-27A-4. Nonetheless, the likelihood of success on the merits is just one factor. As explained in every other section of this brief, AAER is not entitled to preliminary injunctive relief regarding either provision.

---

[7] To the extent that any doubt remains as to the proper reading of the general diversity language, this Court should either certify a question as to its meaning to the Supreme Court of Alabama or abstain from exercising jurisdiction pursuant to the *Pullman* doctrine. "[A]s a matter of federalism and comity, dispositive issues of Alabama law should be first presented to the Alabama Supreme Court to decide." *WM Mobile Bay Env't Ctr. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020). Either certifying a question pursuant to Rule 18 of the Alabama Rules of Appellate Procedure or exercising *Pullman* abstention in favor of State court proceedings regarding that underlying question would provide the Alabama Supreme Court with such an opportunity.

## C. AAER has not (and will not) suffer any irreparable injury, as underscored by its long delay in seeking relief.

"[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "Possibility of an irreparable injury is not enough," because "issuing a preliminary injunction 'based only on a *possibility* of irreparable harm' would be 'inconsistent' with treating a preliminary injunction as an 'extraordinary remedy.'" *Brown*, 4 F.4th at 1225 (quoting *Winter*, 555 U.S. at 22). "And the burden is on the plaintiffs to show that injury—[a court] cannot rely on [its] own intuition about how things will play out." *Id.*

As discussed in the preceding section, AAER has not suffered *an* injury, let alone *irreparable* injury.[8] Regardless, AAER's years-long delay in seeking relief dooms AAER's attempt to show irreparable injury. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* Thus, in *Wreal*, the Eleventh Circuit affirmed a district court's judgment that the plaintiff's "unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Id.* But both the public member position and the other positions on the Board have been either vacant or occupied by a holdover member for years. Specifically, the public member position has been vacant since 2021, which left the Board with only one minority member—the operative condition to AAER's

---

[8] AAER's contention "that the violation of [its] constitutional rights constitutes an irreparable injury . . . finds no support in [the Eleventh Circuit's] precedents." *Brown*, 4 F.4th at 1225. "In fact, those precedents cut the other way." *Id. Brown* identified "only two categories of constitutional claims that presumably cause irreparable injuries—certain First Amendment and right-of-privacy claims," *id.*, neither of which are relevant here. AAER's reliance on *Elrod v. Burns*, 427 U.S. 347, 373 (1976), which discusses the irreparable nature of "First Amendment freedoms[,]" does not change this conclusion.

supposed injury. Having waited years after the positions at issue became eligible for appointment, AAER cannot now rush this case to judgment.

**D. AAER has failed to show that the balance of the equities tips in its favor.**

A court may consider the third and fourth elements of a preliminary injunction together where a governmental entity is a party because "its interest and harm merge with the public interest." *Brown*, 4 F.4th at 1224 (quoting *Swain*, 958 F.3d at 1091) (internal quotations omitted). AAER's request for preliminary relief is extraordinary in and of itself, but the requested relief—an order requiring Defendant to withdraw lawful, statutorily authorized appointments or directing the Senate to stay consideration of those lawful appointments—is even more extraordinary. And Member A's constitutional right *does not* "hang[] in the balance."[9] It never was implicated. AAER's appeals to the merits of the appointments, Doc. 11 at 9, 10, which did not cause it or its members injuries, should not be given any weight.

While Defendant agrees that enjoining her appointments would not prevent the Board from functioning, doing so wouldn't help. The public member position has been vacant (without even a holdover member) since 2021, leaving the Board one member down and the public without their representative on a Board whose purpose is to protect the public. Moreover, the Board has several members who have dutifully served the State for many years (and many years beyond the expirations of their regular terms).[10] The 2024 Session is halfway over, and missing another

---

[9] AAER's citations do not substantiate its broad proposition that "when a constitutional right hangs in the balance, that usually trumps harm to government defendants." Doc. 11 at 9 (citations omitted). Neither case purports to assert such a general rule. *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1272 (11th Cir. 2020), involved abuse-of-discretion review of the plaintiff's right to vote—one *Gonzalez* notes as being the "mo[st] precious [right] in a free county[.]" *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1206 (S.D. Fla 2020), has meager discussion of the equities and instead relies primarily on the merits, saying—as AAER does here, Doc. 11 at 9—that there's no harm to the government in stopping unlawful practices—an inapplicable argument here.

[10] Rick Pettey and Robert Butler have been serving since January 2014 and have been holdovers for almost five years. Billy Cotter has served since March 2014 and has been a holdover for almost four years. Mark Haller has served since May 2019 and has been a holdover for almost three years.

16

appointment window would extend these difficulties and negatively affect the Board's ability to continue to conduct its business in protecting the real estate consumers of this State.

Lastly, the facts laid out above demonstrate that these appointments were not the product of "gamesmanship." Defendant attempted to fill these appointments in June 2023 and did so again this year because of the needs laid out above. Though AAER may not have learned of the appointments until the undersigned provided notice to its counsel, these appointments have been a matter of public record for weeks and were publicly available on the Legislature's website (https://alison.legislature.state.al.us/confirmations). And, again, all but one of the positions on the Board had been eligible for appointment for years. AAER's lack of diligence related to its supposed injury should not weigh in its favor.

## V.  CONCLUSION

For these reasons, the State respectfully requests that this Court deny AAER's request for preliminary injunctive relief.

Dated: March 14, 2024

Respectfully submitted,

Steve Marshall
  *Attorney General*

/s/ Brenton M. Smith
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7300
Fax: (334) 353-8400
Brenton.Smith@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov

**Counsel for Governor Kay Ivey**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 14, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

                                        /s/ Brenton M. Smith
                                        ***Counsel for Governor Kay Ivey***