IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:24-cv-104-RAH [WO] |
| v. | ) ) | |
| KAY IVEY, *in her official capacity as Governor of the State of Alabama*, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff American Alliance for Equal Rights (AAER), on behalf of Member A—a white Alabama resident who recently applied for the unfilled public at-large member seat on the Alabama Real Estate Appraisers Board (Board)—seeks an emergency temporary restraining order and preliminary injunction requiring the Governor of the State of Alabama to withdraw her recent appointments to the Board while the AAER pursues its legal challenge to the race-conscious provisions of the applicable board-appointment laws. Defendant Kay Ivey, the Governor of Alabama, resists. The Court held a hearing on March 18, 2024. The Motion is fully briefed and will be denied.

## II. BACKGROUND

In 1990, the Alabama Legislature created the Board. Currently, "no less than two of the nine board members shall be of a minority race" and the "overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state." Ala. Code § 34-27A-4; Ala.

Admin. Code § 780-X-1-.02.  The Governor appoints members to the Board for no more than two staggered three-year terms and the Alabama Senate confirms them. *Id.*  Board members serve until their successors are appointed and confirmed, until the Governor removes them for certain enumerated reasons, or until incapacity or death.  *Id.*  Of the nine members, seven members must be real property appraisers, one member must be a representative of an appraisal management company, and one member, who fills the at-large position, must be an Alabama resident who is not a real property appraiser.  *Id.*

The Alabama Legislature began its 2024 session on February 6, 2024, and it is expected to adjourn no later than May 20, 2024.  During the 2024 session, as it routinely does during any session, the Senate undertakes consideration of gubernatorial appointments that are subject to Senate confirmation.  Confirmation proceedings in the Alabama Senate generally are not contentious, and most appointees are quickly confirmed when the Senate calendar permits it.

On February 13, 2024, the AAER filed its Complaint, seeking declaratory and injunctive relief on the basis that the challenged provisions of § 34-27A-4 and § 780-X-1-.02 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Before she was served on February 23, 2024, the Governor appointed five individuals to the Board on February 21, 2024, including two of racial minority status.  She made an additional four appointments on February 28, 2024 (after service of the lawsuit), including her appointee to the at-large seat on the Board: Tim Mills, a person of racial minority status.  On February 29, 2024, all nine appointments were forwarded to the Alabama Senate for confirmation.  It is expected that the nine appointments will be confirmed by the Senate as early as March 21, 2024.

The at-large seat has been unfilled for years.  Mr. Mills submitted his application package for the at-large seat to the Governor in January 2021.  The

Governor originally appointed him to the at-large seat on June 1, 2023, but he and several other pending appointees at the time were not confirmed during the 2023 legislative session because the Senate adjourned sine die on June 6, 2023. Mr. Mills and several of the other 2023 appointees were then re-appointed approximately three weeks into the 2024 legislative session, and all nine appointments and re-appointments were forwarded to the Senate on February 29, 2024.

Member A is a member of AAER, a nonprofit membership organization dedicated to challenging distinctions made on the basis of race and ethnicity in state and federal courts. Member A is a white female resident of Prattville, Alabama who allegedly meets all the statutory requirements for appointment to the at-large seat on the Board, wishes to serve in that position, and applied for the at-large position sometime in February 2024.[1] (Doc. 1 at 5.) She wishes to remain anonymous in this lawsuit, employing "Member A" as a pseudonym. AAER uses Member A as its linchpin for associational standing, although little information is provided about Member A or her qualifications for a position on the Board other than that she is white, a resident of Alabama, a member of AAER, and wants to be considered for the position.

On March 11, 2024, the AAER moved for a temporary restraining order and preliminary injunction seeking to (1) require the Governor to withdraw all nine appointments to the Board and (2) enjoin the Governor from enforcing the race-based provisions of Alabama Code § 34-27A-4 and Alabama Administrative Code § 780-X-1-.02. The AAER seeks to maintain the status quo of the Board's membership as it existed at the filing of this action throughout the pendency of this

---

[1] According to AAER's counsel, Member A applied for the position just a few days before this lawsuit was filed in February and notified the AAER of her application within days. This lawsuit followed shortly thereafter.

litigation; that is, with no new appointments or re-appointments to the Board until the lawsuit has concluded.

## III. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested, and there are sufficient allegations to support both.  *See* 28 U.S.C. § 1391.

## IV. STANDARD OF REVIEW

The factors to be considered in analyzing a request for a temporary restraining order and a preliminary injunction are substantively the same.  *Compare Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995), *with Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  In light of the AAER's request for either or both forms of preliminary relief, its Motion will be considered under the preliminary injunction standard because a temporary restraining order is meant to give the Court and the parties time to prepare the motion for preliminary injunction.  Fed. R. Civ. P. 65.

A preliminary injunction "is an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, so for one to issue the movant must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020) (quoting *Jones v. Governor of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020)).[2]  Because a preliminary injunction is a

---

[2] The third and fourth factors generally "merge" where "the Government is the opposing party" to the preliminary injunction request. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020) (citation omitted).  But in *Nken v. Holder*, the Supreme Court said that such a merger occurs in the context of a movant's application for stay but not necessarily a preliminary injunction. 556 U.S. 418, 435

"drastic remedy," it should not be granted unless "the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted). The decision to grant or deny a preliminary injunction is within the sound discretion of the district court. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (citation omitted).

When ruling on a preliminary injunction, "all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976). The Court may also consider supplemental evidence, even hearsay evidence, submitted by the parties. *See Levi Strauss & Co. v. Sunrise Intern. Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## V. ANALYSIS

The Governor opposes the AAER's request, invoking lack of standing, lack of irreparable harm through the AAER's delay, and the general equities flowing from the extraordinary relief being sought. Despite the Governor's protests, the AAER has sufficiently shown that Article III standing exists. But the AAER has not shown its entitlement to a preliminary injunction.

### A. Standing

The AAER, a voluntary association, has standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation

---

(2009).  Since there is a question on that issue, the Court will analyze the factors separately if it needs to reach them.

of individual members in the lawsuit." *Hunt v. Washington State Apple Adv. Comm'n,* 432 U.S. 333, 343 (1977). The Governor challenges only the first factor; that is, whether Member A has standing to sue in her own right.

To meet the first factor, Member A must herself meet Article III standing. She must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

The Governor again only challenges the first factor. The allegations and record easily support the conclusion that the other two factors can be met: the act of appointing members to the Board, including the public at-large position, is fairly traceable to the Governor who holds appointment power, and a favorable ruling in Member A's favor on the declaratory relief would potentially redress the injury of which she complains by halting enforcement of any race-based appointment requirements, particularly the at-large seat.

The AAER's standing then turns on whether Member A has "suffered an injury in fact." *Id.* The Governor contends she has not. The Court disagrees.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan,* 504 U.S., at 560 (internal quotation marks omitted)). To be "particularized," an injury in fact "must affect the plaintiff in a personal and individual way." *Id.* (citation omitted). A "concrete" injury is one that "must actually exist," meaning it is "'real,' and not 'abstract.'" *Id.* at 340 (citation omitted). In addition to showing past injury, "a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" *Houston*

*v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.'" *Id.* at 1329 (citations omitted). *Accord O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

The Governor argues the AAER, through Member A, has not suffered an injury in fact, nor has it shown a "real and immediate threat of future injury or continuing, present adverse effects." (Doc. 20 at 11.) Under the Governor's theory, the fact that she appointed two members of a racial minority status to the Board approximately a week before appointing Mr. Mills to the at-large seat conclusively means that the race-conscious requirements of the pertinent statute and regulation were not implicated when she considered Mr. Mills for appointment. Furthermore, the Governor avers that there is no "real" threat of future injury because there is "no reason to believe that Mr. Mills [will not] get confirmed," and there is no "immediate" threat of future injury because such a threat "could only exist if [the Governor] makes another appointment to [the] position. But assuming the [Alabama] Senate confirms Mr. Mills, that threat could not occur until at least March 26, 2026[.]" (Doc. 20 at 11.)

The AAER argues that Member A did suffer an injury in fact because the challenged provisions required the Governor to consider race when she appointed Mr. Mills to the at-large seat, and there is a "real and immediate" threat of future injury or "continuing, present adverse effects" because the harm of which the AAER

7

complains is likely to recur the next time the Governor makes an appointment to the Board.

At the time this lawsuit was filed, the Governor had not yet selected the three appointees of racial minority status to the Board, nor had she made appointments or re-appointments to any of the nine seats.  But applications for appointments to the Board had been received and were under review, including that of Mr. Mills and Member A.  According to the AAER, Member A was injured because she was denied "equal treatment resulting from the imposition of the [race-conscious appointment] barrier, not the ultimate inability to obtain the [appointment to the at-large seat on the Board]."  *Ne. Fla. Chapter of the Assoc'd Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).  That is enough to show standing when this lawsuit was filed.

Perhaps more appropriate for a mootness argument, the Governor also argues no harm from a racial quota because the Governor had already tapped two appointees of racial minority status before she filled the at-large seat with Mr. Mills.   The Governor's actions in tiering the nominations in the manner that she did does not divest the Court of subject-matter jurisdiction, the AAER of associational standing, or conclusively disprove harm.   Indeed, this action presents the "exceptional situation[]" when the "narrow" exception to mootness, the "capable of repetition, yet evading review" doctrine, applies.  *Health Freedom Def. Fund v. President of U.S.*, 71 F.4th 888, 892–93 (11th Cir. 2023).

The "capable of repetition, yet evading review" doctrine applies "only where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Id.* (quoting *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 735 (2008))).

The AAER had standing at the time this lawsuit was filed, and just two weeks later, the Governor made her nine appointments to the Board. Such a short period is sufficient to satisfy the first prong of the analysis. *Bourgeois v. Peters*, 387 F.3d 1303, 1308–09 (11th Cir. 2004). And in the absence of a judicial declaration that the contested provisions are unconstitutional or a change in the applicable law, the second prong is met because there is a reasonable expectation, not just a "mere possibility[,]" that the AAER's members, including Member A, would be subject to the same injury any time a seat is or will become open and/or when the Governor receives applications for a seat; that is, denial of "equal treatment resulting from the imposition of the [race-conscious appointment] barrier," *Ne. Fla. Chapter of the Assoc'd Gen. Contractors of Am.*, 508 U.S. at 666. *See Bourgeois*, 387 F.3d at 1309; *Arcia*, 772 F.3d at 1343.[3] Although these seats are for three-year terms, vacancies can arise at any time upon resignation, removal, incapacity, or death, and often with little or no notice to the public and without a pronounced window for receiving applications. Lists of applicants are often generated well in advance of a position opening. Thus, the Court does not find the Governor's arguments compelling. The AAER had standing to pursue its equal protection claim at the initiation of the lawsuit, it has standing now, and it will have standing if Mr. Mills is confirmed.

## B. The AAER's Request for a Preliminary Injunction

The AAER has standing, but it is not entitled to a preliminary injunction because it has not shown irreparable harm will result absent the injunction.

Harm "is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285.

---

[3] Both in briefing and during the hearing, the AAER claimed that the Governor's actions in making the appointments in the manner that she did was "gamesmanship." (Doc. 11 at 2; Doc. 28 at 2, 5.) But the Court observes that there may be some gamesmanship on the AAER's part as well. That aside, the AAER has standing to pursue the equal protection claim here.

An irreparable harm is one that is "actual and imminent, not remote or speculative." *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1288 (11th Cir. 2013).

The AAER claims the harm here is the deprivation of Member A's "[]ability to compete on an equal footing" during the Governor's appointment process for the at-large seat on the Board, on account of the statutorily mandated racial preference, in violation of the Equal Protection Clause. (Doc. 11 at 8 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 508 U.S. at 666).) In response, the Governor argues first that the AAER has not suffered an injury-in-fact and, second, that even if it did, the AAER's delay in seeking the preliminary injunction forfeits its requested emergency relief. (Doc. 20 at 15 (citing *Wreal v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016)).)

True, Mr. Mills's appointment and looming confirmation to the Board *may* deprive Member A of her ability to compete on an equal footing free of racial preference for the currently unfilled at-large seat. That harm cannot be undone through monetary remedies at this stage of the proceeding if the Alabama Senate confirms Mr. Mills in the coming days. But the AAER has not submitted evidence that the Governor even considered applicants' race (including that of Mr. Mills) when she appointed Mr. Mills and the two other appointees of racial minority status to seats on the Board. The AAER and Member A simply assume that the Governor did based on the mere existence of the statute and regulation, an alleged presumption that the Governor was obligated to follow the law as written, and the minority status of Mr. Mills and the other two minority applicants. The AAER provides no legal authority in support of its argument, and the argument finds no home in any binding precedent located by this Court. Courts have recognized that governors are "under a general duty to enforce state laws[,]" but there has been no showing that courts presume as a matter of law that they do so, especially when the parties, as here, seem

10

to be in agreement that racial quotas of this nature are per se unconstitutional. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1342 (11th Cir. 1999) (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979)).

The record reveals that Mr. Mills was first appointed in June 2023 but not confirmed during the 2023 session and that he was simply re-appointed by the Governor when the 2024 legislative session began. No evidence has been provided showing that Mr. Mills's appointment in 2023 was based on race, let alone because of any racial quotas required under Alabama law. It may well be that Mr. Mills was the only applicant for the at-large position in 2023 and it was the Governor's intent to simply carry his appointment forward into the next legislative session with little or no consideration given to someone who applied for the at-large position last minute, like Member A. There are also considerations of qualifications that extend beyond those required by statute. The AAER has presented no evidence of Member A's qualifications for the position beyond the statutory minimum requirements of being an Alabama resident and non-real estate appraiser. The Governor, on the other hand, has submitted Mr. Mill's application package, which includes a cover letter, his curriculum vitae, and his detailed answers to a host of questions that the Governor posed to all of the applicants for seats on the Board.

The AAER concedes that it only seeks preliminary relief so that the Court may retain jurisdiction, apparently with the fear that standing will be lost or vanish if Mr. Mills and the other minority-status applicants are confirmed. (Doc. 28 at 20 n.7.) The AAER should not be concerned because, as previously explained, it does have standing and will continue to have it even if all nine appointees are confirmed.

The mere possibility of irreparable harm here, the last-minute nature of Member A's foray into the application process, and the general equities presented here, particularly when the AAER has not submitted evidence that the Governor appointed Mr. Mills because of race and not because he was simply the best qualified

candidate, or a better candidate than Member A, or a candidate who was previously appointed, or a candidate who submitted a timely and/or complete application, is insufficient to warrant the "extraordinary remedy" that is being sought here.[4] *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) ("[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").  And make no mistake, judicial intervention into an executive branch appointment (let alone nine appointments) involving a legislative branch confirmation would be an extraordinary and drastic event. The AAER has not shown that such action is necessary or needed.  The AAER's Motion will be denied.[5]

## VI. CONCLUSION

It is therefore **ORDERED** that the AAER's *Motion for a Temporary Restraining Order/Preliminary Injunction* (doc. 11) is **DENIED**, and the Defendant's *Motion to Strike* (doc. 19) is **DENIED as moot**.

---

[4] When counsel was questioned about Member A's qualifications to serve on the Board compared to those of Mr. Mills, AAER's counsel was unable to provide any detail about Member A's qualifications other than her residency status and willingness to serve.  Mr. Mills, for example, holds a college degree, a masters degree, has worked in the real estate industry for years, is a member of various real estate-associated organizations, and has extensive examples of volunteer service.  Member A has submitted nothing about her application or qualifications.

[5] During briefing on the Motion, the Governor conceded that the racial quota language of the challenged provisions, that "no less than two of the nine board members shall be of a minority race[,]" is unconstitutional.  (Doc. 20 at 1; Doc. 28 at 1 n.1.)  The parties disagree on the constitutionality of the second sentence of the challenged provisions, that "the overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state."  (Doc. 20 at 13; Doc. 28 at 1 n.1.)

**DONE** on this the 19th day of March 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE