IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>KAY IVEY, in her official capacity as Governor of the State of Alabama,<br><br>        Defendant. | Civil Action No. 2:24-cv-00104-RAH- JTA |

**MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR'S, THE ALABAMA ASSOCIATION OF REAL ESTATE BROKERS, MOTION FOR INTERVENTION**

Proposed Intervenor, the Alabama Association of Real Estate Brokers ("AAREB"), is a longstanding trade association and civil rights organization for Black real estate professionals in Alabama, including appraisers. Proposed Intervenor moves to intervene as of right as a defendant to protect its legal interest in upholding two statutory requirements that govern appointments to Alabama's Real Estate Appraisers Board ("Appraisers Board"). In the alternative, Proposed Intervenor seeks permissive intervention from this Court.

Plaintiff American Alliance for Equal Rights ("AAER") seeks to nullify two statutory requirements: *first*, that "no less than two of the nine board members shall be of a minority race" ("Racial Minorities Requirement"), and *second*, that the Appraisers Board "shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state" ("General Inclusion Requirement"). Ala. Code § 34-27A-4 (2024).  In filings to date, Defendant Ivey has not defended either statutory requirement: the Governor has characterized the Racial Minorities Requirement as unconstitutional, and the General Inclusion Requirement as "hortative and unenforceable." Answer 4-5, ECF No. 36. In a recent filing, the parties indicated that they are discussing settlement. Joint Mot. to Continue 26(f) Report Deadline, ECF No. 38.

Given Defendant Ivey's position, and the potential of a settlement, Proposed Intervenor must intervene to defend its significant legal interests. Several appraisers are members of AAREB. Indeed, one of AAREB's members currently serves on the Appraisers Board. The Appraisers Board has significant authority to regulate professional appraisers and can impact practices in the profession, including issues of racial and other bias in appraisals. Given its authority, having racial minorities and other groups, like women and Alabamians from rural areas, included on the Appraisers Board is paramount. As detailed below, the challenged statutory requirements further AAREB's mission and its interests in promoting representation on

the Appraisers Board for its members and equitable real estate practices, including fair appraisals.

AAREB is entitled to intervene as of right. It is moving to intervene promptly, ten days after learning of the settlement discussions, and less than a month after Defendant Ivey's Answer. Because this case is in its early stages, and no scheduling order is in place, the parties will not be prejudiced by AAREB's intervention. That cannot be said for AAREB's interests, which, absent successful intervention, will be impaired by the relief Plaintiff AAER seeks. AAREB's significant legal interests and the inadequacy of the existing parties' defense further support intervention as of right. Specifically, the defense offered by Defendant Ivey demonstrates that Defendant Ivey will not defend the legality and enforceability of the two statutory requirements.

While AAREB believes it is entitled to intervene as of right, it seeks permissive intervention in the alternative, which is also warranted here.

## FACTUAL BACKGROUND

Established in 1990, the Appraisers Board aims to "protect the public interest" by ensuring that consumers receive services from fully qualified appraisers. Ala. Real Estate Appraisers Bd., *About Us*, https://reab.alabama.gov/about/ (last visited Apr. 26, 2024). The Appraisers Board controls licensing, continuing education requirements, and disciplinary action against licensed appraisers, among other responsibilities. *Id.* Under Alabama law, two of the nine members of the Appraisers Board "shall be of a minority race," and "[t]he overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state." Ala. Code § 34-27A-4 (2024); *see also* Ala. Admin. Code 780-X-1-.02 (2023) (regulation with identical provisions).

The Alabama Association of Real Estate Brokers ("AAREB") is a trade association and civil rights organization for Black real estate professionals in Alabama. Brown Decl. Ex. A ¶ 3. AAREB's members include licensed appraisers, one of whom currently serves on the Appraisers Board. *Id.* ¶ 10. AAREB is the Alabama chapter of the National Association of Real Estate Brokers. ("NAREB"). *Id.* ¶ 4. Founded in 1947, NAREB is the oldest trade association for Black real estate professionals with a mission of "Democracy in Housing." *Id.* ¶ 5. NAREB was established at a time when Black real estate professionals were wholly excluded from joining other professional organizations due to their race. *Id.* As part of its mission, AAREB engages in outreach, education, and advocacy to increase diversity in the profession, close the gap in homeownership and wealth for racial minorities, and dismantle racially discriminatory practices in the real estate industry that have caused devastating harm to Black communities and continue to do so. *Id.* ¶ 8. Through its work, AAREB has direct knowledge of the history and ongoing impact of discrimination in all facets of the real estate industry in Alabama, including in licensing and appraisals. *Id.* ¶ 17.

Specific to appraisals, AAREB engages in education and advocacy efforts related to appraisal bias and the resulting loss of wealth in Black communities. *Id.* ¶ 11. In addition, because Black appraisers and other appraisers of color are underrepresented in Alabama and nationwide, both AAREB and NAREB conduct outreach and mentoring to encourage underrepresented groups to join the profession. *Id.* ¶ 14. AAREB also encourages its members to serve on public boards, including the Appraisers Board, when it learns of any vacancies. *Id.* ¶ 13.

AAREB advocates for a range of policies, like the two requirements at issue here, that attempt to address the legacy of discrimination that still impacts Black Alabamians, including real estate professionals and consumers. *Id.* ¶ 15. For example, when the Alabama Senate

4

introduced a bill to repeal a requirement that at least one Black member serve on Alabama's Real Estate Commission in 2021, AAREB and NAREB advised the Legislature's leadership and Governor Ivey through letters and other advocacy that this provision was needed to correct for the legacy of racial discrimination in housing and lending in Alabama. *Id.* ¶ 16. AAREB also supports broader inclusion efforts to ensure that professional boards reflect the communities that they serve. *Id.* ¶ 12.

The Appraisers Board regulates professional appraisers and helps shape practices in the real estate industry. Having different perspectives and life experiences at the table leads to more equitable outcomes, particularly in the context of licensing, investigations, and discipline of members. *Id.* The weakening, or elimination, of either or both of the two provisions that are the subject of the litigation would directly impact AAREB's members and AAREB's ability to carry out its mandate of "Democracy in Housing." *Id.* ¶ 18.

## PROCEDURAL BACKGROUND

On February 13, 2024, Plaintiff AAER initiated this litigation against Governor Ivey on behalf of Member A. Compl., ECF No. 1. AAER alleges that the Defendant, Governor Ivey, discriminated against Member A when she applied for the public member seat on the Appraisers Board. *Id.* at 5. Member A, now identified as Laura Clark, is a white female based in Prattville, Alabama. Mem. Op. and Order 3, ECF No. 30; *see also* Answer 1, ECF No. 36. AAER represented that Ms. Clark submitted her application just days before the Complaint was filed. Mem. Op. and Order 3 n. 1, ECF No. 30. AAER claims that Ms. Clark received unequal consideration because of a "racial quota." Compl. 4, ECF No. 1. AAER later clarified that it views both the Racial Minorities Requirement and the General Inclusion Requirement as "racial

mandates" that must be "declared unconstitutional." Reply in Supp. of Pls. Mot. for TRO/Prelim. Inj. 14, ECF No. 28.

Before the Governor responded to the lawsuit, Plaintiff moved for a temporary restraining order to block the Governor's pending appointments to the Appraisers Board. Plaintiff argued that the appointments amounted to "gamesmanship" calculated to strip this Court of jurisdiction. Pls. Mot. for TRO/Prelim. Inj. 2, ECF No. 11. In opposing the TRO motion, the Governor disputed that this Court has subject matter jurisdiction, including whether Member A had standing. Resp. in Opp. to Mot. for TRO/Prelim. Inj. 7-12, ECF No. 20. The Court denied the TRO motion and also held that the Governor's pending appointments would have no impact on Plaintiff's standing. Mem. Op. and Order 9, 12, ECF No. 30.

Defendant's positions as to these provisions became clear in the Answer filed March 29, 2024. Defendant Ivey agreed with AAER that the Racial Minorities Requirement – that two members shall be "of a minority race" – is "an unconstitutional quota" that she does not—and will not—enforce. Answer 4, ECF No. 36. In addition, Defendant Ivey conceded that the Racial Minorities Requirement serves no "compelling government interest," does not "remediate any specific instances of [unlawful] racial discrimination," and is not "narrowly tailored to remediating past, intentional discrimination." *Id.* at 3-4. Nor did Defendant Ivey defend the General Inclusion Requirement. Rather, Defendant Ivey argued that the General Inclusion Requirement is "hortative and unenforceable." *Id.* at 5. In other words, Defendant Ivey claims that she has no legal obligation to take *any* action to comply with this requirement.

Last week, the parties moved jointly to continue their Rule 26(f) Report deadline – which presumably would have included a period of discovery and deadlines for filing dispositive motions – because they are engaged in settlement discussions. Joint Mot. to Continue 26(f)

Report Deadline, ECF No. 38. The Court granted that motion for good cause. Text Order, ECF No. 39.

## LEGAL STANDARD

Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as of right. Fed. R. Civ. P. 24(a). In the Eleventh Circuit, the moving party must demonstrate: (1) that its application to intervene is timely; (2) it has an interest relating to the property or transaction which is the subject of the action; (3) that disposition of the action may, as a practical matter, impede or impair its ability to protect its interest; and (4) its interest is represented inadequately by the parties in the suit. *See Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 290 (11th Cir. 2020).

In addition, courts may grant permissive intervention under Rule 24(b) where the intervenor has a claim or defense that shares with the main action a common question of law or fact and where the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *Id.* at 293; *see also* Fed. R. Civ. P. 24(b).

## ARGUMENT

Proposed Intervenor meets all four requirements for mandatory intervention. In the alternative, permissive intervention is appropriate here given the common questions of law and fact, and because intervention will not unduly delay or prejudice the current parties.

I.  **Proposed Intervenor, AAREB, Is Entitled to Mandatory Intervention**

   A.  <u>AAREB's motion is timely.</u>

Four factors determine whether a motion is timely under Rule 24(a): "(1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably

7

should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 272 F. App'x 817, 819 (11th Cir. 2008) (internal citation omitted). In addition, a more lenient standard for timeliness applies where the would-be intervenor qualifies for intervention as of right rather than permissive intervention. *United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726, at *6 (M.D. Ala. Aug. 8, 2006) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977).)[1] Under either the mandatory or permissive standard, AAREB's motion is timely.

*First*, Proposed Intervenor moved to intervene promptly after it learned of its interests in this matter and its need to intervene. Plaintiff AAER filed its Complaint on February 13, 2024. Compl., ECF No. 1. Members of AAREB learned of this lawsuit through local media coverage in the Alabama Political Reporter. Brown Decl. Ex. A ¶ 9. At that time, there was no indication that AAREB's interests would not be adequately protected by Defendant Ivey. In the weeks that followed, the parties engaged in expedited briefing and a hearing on Plaintiff's emergency motion for a temporary restraining order and preliminary injunction. Defendant's filings related to the TRO indicated plans for a robust defense. *See* Def.'s Opp. to Mot. for TRO/Prelim. Inj., ECF No. 20 (raising standing, mootness, and subject matter jurisdiction arguments). Defendant Ivey responded to the lawsuit on March 29, 2024. Answer, ECF No. 36. The Answer revealed that AAREB's interests would not be adequately protected by Defendant Ivey. Defendant Ivey indicated that she would not defend the constitutionality of the Racial Minorities Requirement,

---

[1] The decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

and that she did not view the General Inclusion Requirement as enforceable. *Id.* at 4-5. Intervention to protect AAREB's interests became even more apparent on April 16, when AAREB learned that the parties were discussing a potential settlement. *See* Joint Mot. to Continue 26(f) Report Deadline, ECF No. 38 (requesting continuance on account of "good faith negotiations . . . to resolve this matter."). Within ten days of learning that this litigation may be resolved without any party defending the two critical statutory requirements, and less than a month after Defendant Ivey's Answer, AAREB is moving to intervene.

  *Second*, because AAREB is moving to intervene swiftly—less than a month after it learned of its interest—the existing parties are not prejudiced by the intervention. *See, e.g.*, *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (finding motion timely and no prejudice to the parties where motion was filed seven months after the complaint, three months after the government's motion to dismiss, and before discovery had begun); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (affirming timeliness where motion was filed six months after complaint, discovery was complete, and briefing schedule was set). Here, discovery is not yet underway, nor has a scheduling order been issued. In addition, the Court already determined that there is no risk of imminent or irreparable harm to Plaintiff when it denied Plaintiff's motion for a TRO and allowed the litigation to unfold in the normal course. Mem. Op. and Order, ECF No. 30.

  *Third*, Proposed Intervenor will be unduly prejudiced if the Court denies this Motion. As discussed *infra* p.13-14, AAREB believes that the two statutory requirements are lawful and enforceable. The sole Defendant, Governor Ivey, disagrees. Given Defendant Ivey's position, Proposed Intervenor knows its interests in this litigation will not be represented unless this Motion is granted. If this Motion is denied, the existing parties could resolve this matter without

anyone defending the statutory provisions on the merits, or by simply agreeing that the two provisions will never be enforced. That sort of resolution, without any discovery to develop the record as to why these provisions are crucial, will have a long-term negative impact on the composition of the Appraisers Board and on AAREB's interest in promoting representation for racial minorities and other forms of inclusion on the Appraisers Board.

*Fourth*, there are no unusual circumstances that militate against intervention. *Cf. Salvors, Inc v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017) (finding that the district court abused its discretion in denying a motion to intervene where the unusual circumstances–namely that neither party had asserted, nor could the district court identify, any prejudice they would suffer from intervention, but the intervenor would be prejudiced if unable to assert its interests–militated for allowing intervention); *Conway v. Blue Cross Blue Shield of Alabama*, No. 2:12-cv-02532-RDP, 2019 WL 1620360 at *6 (N.D. Ala. Apr. 16, 2019) (denying a motion to intervene in part because of unusual circumstances that militated against intervention, namely that intervention would lead to essentially "inserting an Alabama federal court into what is clearly a significant Pennsylvania conundrum").

B. <u>AAREB has a legally protectable interest in this matter.</u>

AAREB meets Rule 24(a)'s interest requirement because it has a "direct, substantial, and legally protectable interest" in these proceedings. *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). An intervenor's interest must be "something more than an economic interest" and must "derive[] from a legal right." *Id.* However, an intervenor need not demonstrate Article III standing to intervene. *Loyd v. Alabama Dep't of Corrs.*, 176 F.3d 1336, 1341 n. 9 (11th Cir. 1999).

Here, AAREB has a demonstrated legal interest in ensuring both that the Appraisers Board includes historically excluded racial minorities and that an effort is made to include a range of perspectives. AAREB's members include licensed appraisers who are directly regulated by the Appraisers Board, one member who currently serves on the Appraisers Board, and other members who may later apply to serve. Brown Decl. Ex. A ¶¶ 10, 13. To enhance inclusivity and representation in the appraising profession, AAREB encourages its members to participate on public boards like the Appraisers Board and engages in mentoring and outreach to historically underrepresented groups. *Id.* ¶¶ 13, 14. AAREB's efforts and interests will be directly impacted if the challenged statutory provisions are struck down.

Much like the intervenors in *Wooden v. Bd. of Regents of the Univ. Sys. of Georgia*, AAREB and its members will be directly impacted if Plaintiff AAER succeeds in nullifying the two statutory requirements. 247 F.3d 1262, 1268 (11th Cir. 2001) (noting that organizations representing Black applicants and individuals successfully intervened to defend the consideration of race in remedying Georgia's formerly segregated system of higher education). In the challenge to the University of Georgia's race-conscious admissions program, the district court explained that intervention was appropriate because the litigation would determine the racial composition of intervenors' future classes and prospective Black students' ability to have their race considered as one factor in the existing admissions policy. *Johnson v. Bd. of Regents of the Univ. Sys. of Georgia*, 4:99-CV-00169-BAE, Order (Dec. 15, 1999) 3, ECF No. 75. That same reasoning applies to AAREB and its members. The challenged statutory requirements impact the composition of the Appraisers Board and the ability of prospective Black applicants, including AAREB's members, to serve on the Appraisers Board.

*Wooden* is not an outlier. Other courts have granted intervention to impacted individuals and organizations in similar cases about whether race can be considered in certain programs. *See, e.g.*, *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (holding that interest in maintaining the use of race as a factor in the University's admissions program is a sufficient substantial legal interest to support intervention as of right); *Sims v. Montgomery Cnty. Comm'n*, 887 F. Supp. 1479, 1482 (M.D. Ala. 1995), *aff'd sub nom. Sims v. Montgomery Cnty. Comm'n*, 119 F.3d 9 (11th Cir. 1997) (noting that white male deputies successfully intervened to oppose race-based promotion practices in a consent decree); *Students for Fair Admissions Inc. v. Univ. of N. Carolina*, 319 F.R.D. 490, 493-96 (M.D.N.C. 2017) (granting permissive intervention to "minority students" at UNC-Chapel Hill, and "high-achieving minority students" who intended to apply, to develop the factual record on the legacy of racial discrimination and how the challenged admissions policy contributed to creating campus diversity); *cf. Podberesky v. Kirwan*, 38 F.3d 147, 162 n.* (4th Cir. 1994) (discussing that Black students who previously received a scholarship for Black students at the University of Maryland had successfully intervened in the lawsuit challenging that program).

Moreover, representation on the Appraisers Board is critical to addressing historical discrimination that has impacted home ownership and property values, and current discriminatory practices in the real estate industry, such as appraisal bias. Greater inclusivity and representation on the Appraisers Board helps to reassure the public that the Appraisers Board will be accountable and responsive to their concerns, including potential complaints about discrimination in the appraisal process. *See* Brown Decl. Ex. A ¶ 11, 12. As to the Racial Minorities Requirement, in particular, AAREB believes that it is necessary to correct for the legacy of racial discrimination that still impacts Black Alabamians, including real estate

professionals and home buyers. *Id.* ¶ 15. AAREB has successfully advocated against a similar effort by the Legislature to remove a seat designated for a Black commissioner on Alabama's Real Estate Commission. *Id.* ¶ 16.

      C.  <u>The outcome here may impair Proposed Intervenor's interests.</u>

The disposition of this matter, "will, as a practical matter, impair [AAREB's] ability to protect [its] interests." *Chiles*, 865 F.2d at 1214. Whether this matter is resolved by the Court, or through a negotiated settlement that undermines or completely does away with the Racial Minorities Requirement and the General Inclusion Requirement, AAREB's interests will necessarily be implicated. "Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply that practical disadvantage which warrants intervention as of right." *Id.* AAREB's ability to later seek to enforce these provisions would be impaired, if not foreclosed, if there is a judicial declaration that the challenged provisions are either unconstitutional or unenforceable. In the same way, if the parties resolve this matter simply by agreeing that the Governor will not enforce these provisions, AAREB would be left with unclear pathways to vindicate its interests.

      D.  <u>The existing parties inadequately protect Proposed Intervenor's interests.</u>

An intervenor's burden is "minimal" to show that its interests may be inadequately represented. *Chiles*, 865 F.2d at 1214 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). Additionally, any doubts about adequacy should be "resolved in favor of the proposed intervenors." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Adequacy will be presumed "when an existing party pursues the same ultimate objective as the party seeking intervention." *Id.* at 215.

Any presumption of adequacy is defeated here because Defendant Ivey does not seek the "same ultimate objective" as AAREB. *Id.* Defendant Ivey has conceded that the Racial Minorities Requirement is unconstitutional and has stated that the General Inclusion Requirement is unenforceable – a significant divergence from AAREB's position. AAREB is not seeking to intervene to pursue a different legal strategy for achieving the same objective as the Governor; AAREB seeks a different outcome from Defendant Ivey. If allowed to intervene, AAREB will vigorously defend both requirements in the challenged statute.

Moreover, Defendant Ivey's seeming willingness to settle further shows that AAREB's interests will not be adequately protected by the existing parties. In *Clark v. Putnam Cnty.*, the court held that county commissioners did not adequately represent the intervenors, six Black voters, because the commissioners represented *all* county residents, were elected officials with an interest in political popularity, and signaled their willingness to settle even though the intervenors were adverse to settlement. 168 F.3d 458, 461 (11th Cir. 1999). Here too, Defendant Ivey is an elected official that is charged with representing *all* Alabamians and her admitted willingness to resolve this lawsuit in its early stages cuts against AAREB's interest in upholding the two statutory requirements. Intervention as a right is appropriate here.

## II. In the Alternative, Proposed Intervenor Seeks Permissive Intervention.

If the Court finds that Proposed Intervenor cannot intervene as of right, AAREB asks this Court to grant permissive intervention. Under Rule 24(b) of the Federal Rules of Civil Procedure, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will

unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As discussed *supra* 7-9, this Motion is timely. And Proposed Intervenor's defense of the challenged statutory requirements, including asserting that they are constitutional and enforceable, certainly shares common questions of law or fact with the main action. Finally, permitting intervention will not cause undue delay or prejudice to the original parties. This litigation is in its nascent stages: there is no scheduling order in place that would need to be modified due to AAREB's intervention and discovery has not commenced. Permissive intervention is appropriate here.

## CONCLUSION

For the foregoing reasons, Proposed Intervenor, AAREB, respectfully requests that this Court grant its Motion to Intervene and allow it to file an Answer (attached as Exhibit B).

Respectfully submitted,

*/s/ Martin E. Weinberg*
Martin E. Weinberg
Ala. Bar No. ASB-0817-A61W
Law Firm of Martin E. Weinberg
P.O. Box 154
Shannon, Alabama 35142
(205)785-5575
attorneyweinberg@bellsouth.net

Victoria S. Nugent*
D.C. Bar. No. 470800
Sunu Chandy*
D.C. Bar No. 1026045
Brooke Menschel
Ala. Bar No. ASB-7675-Z61K
Democracy Forward Foundation

P.O. Box 34553
Washington, DC 20043
(202) 448-9090 Ext. 1011
vnugent@democracyforward.org
schandy@democracyforward.org
bmenschel@democracyforward.org

*Pro Hac Vice Forthcoming*
*Counsel for Proposed Intervenor*

16

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 26, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

                                      */s/ Martin E. Weinberg*
                                      Martin E. Weinberg