IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation,<br><br>   *Plaintiff*,<br><br>v.<br><br>KAY IVEY, *in her official capacity as Governor of the State of Alabama*,<br><br>   *Defendant*. | )<br>)<br>)<br>)<br>)  **Civil Action No.:**<br>)  **2:24-cv-00104-RAH-JTA**<br>)<br>)<br>)<br>)<br>)<br>) |

## RESPONSE TO MOTION TO INTERVENE

Defendant opposes the motion to intervene by the Alabama Association of Real Estate Brokers because such intervention would accomplish nothing. *See Travelers Prop. Cas. Co. of Am. v. Lamar Co., LLC*, No. 07-0704-KD-C, 2008 WL 11395509, at *7 (S.D. Ala. June 26, 2008) (citing *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1580 (11th Cir. 1985)) (denying intervention on grounds of futility); *see also Elliott Indus. Ltd. P'ship v. BP Amer. Prod. Co.*, 407 F.3d 1091, 1103 n.5 (10th Cir. 2005) (explaining that "intervention at that point would have been futile because the issue of subject matter jurisdiction had been settled in the district court"); *N.Y. Life Ins. Co. v. Sahini*, 730 F. App'x 45, 50 (2d Cir. 2018) (citing *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 854, 858 (2d Cir. 1998)) (upholding denial of intervention on grounds of futility); *cf. Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 435 (2017) ("The parties do not dispute—and we hold—that such an intervenor must meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff.").

*First*, and as the Association notes, Defendant "does not—and will not—enforce" the quota. Doc. 40-1 at 6 (citing Doc. 36). Defendant is entitled to a presumption of good faith that she will continue to abide by that representation made to this Court. *Cf. Coral Springs St. Sys., Inc.*

*v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004); *Doe v. Pryor*, 344 F.3d 1282, 1287–88 (11th Cir. 2003). Even if the Association intervenes and successfully secures an opinion from this Court upholding the racial quota's constitutionality, the only way it could receive more than an advisory opinion[1] would be for this Court to order Defendant to enforce the quota.

But an order directing a State official as to how to comply with State law would run afoul of the Eleventh Amendment. *Ex parte Young*'s limited exception to the States' sovereign immunity "disappears" when compliance with State law is at issue because a federal court's grant of relief on State-law grounds "does not vindicate the supreme authority of federal law." *Pennhurst v. State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). "On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*; *accord LeFrere v. Quezada*, 582 F.3d 1260, 1262 (11th Cir. 2009) ("Because state supreme courts are the final arbiters of state law, 'when we write to a state law issue, we write in faint and disappearing ink' . . . ." (quoting *Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir. 1994) (Carnes, J., dissenting)).[2] Because the Association's interest turns upon *how* Defendant complies with State law, this Court cannot provide it meaningful relief. *Cf. Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) ("Put another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." (cleaned up)).[3] Accordingly, the motion to intervene should be denied as futile.

---

[1] *Contra, e.g.*, *Miller v. F.C.C.*, 66 F.3d 1140, 1145–46 (11th Cir. 1995).

[2] Indeed, as even the Association itself appears to acknowledge, this unusual circumstance of "inserting an Alabama federal court into what is clearly a significant [State law dispute]" "militate[s] against intervention" here. Doc. 40-1 at 10 (quoting *Conway v. Blue Cross Blue Shield of Ala.*, No. 2:12-cv-02532-RDP, 2019 WL 1620360, at *6 (N.D. Ala. Apr. 16, 2019)).

[3] This issue becomes even clearer when considering the Association's discussion of the general diversity language. *See* Doc. 40-1 at 6. Defendant has defended that language as constitutional but ultimately considers that language hortative and unenforceable as a matter of *State* law. *See* Doc.

*Next*, the futility of the Association's motion to intervene is all the more relevant given that the parties are on the eve of resolving the case. Though early in the case, assuming that the parties settle, the Association's intervention would result in a significant expenditure of additional resources by the Court and the parties. Such a disruption should also be weighed against the high unlikelihood that the Association could successfully argue that an explicit, absolute racial preference is sufficiently tailored to satisfy strict scrutiny. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989) ("We think it obvious that such a program [that gave "a successful black, Hispanic, or Oriental entrepreneur . . . an absolute preference over other citizens based solely on their race"] is not narrowly tailored to remedy the effects of prior discrimination."); *see also Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 226 (2023) (The Court has "long rejected" the view "that the Fourteenth Amendment permits state actors to remedy the effects of societal discrimination through explicitly race-based measures."). Defendant does not take lightly declining to defend a duly enacted State statute; nonetheless, the precedent discussed above renders the quota at issue indefensible.

*Lastly*, the underlying premise of the Association's intervention—that, but for the quota, Defendant would not appoint minority candidates to the Board[4]—is demonstrably false. Indeed, despite not enforcing the quota, Defendant appointed three minority candidates to the Board (one more than the quota purported to require). Doc. 20 at 6 (citing Doc. 18-4 at 2, 22, 65). The record

---

20 at 13–14; Doc. 36 at 5. This Court lacks authority to order Defendant to comply with the Association's preferred reading of a *State* statute.

[4] *See* Doc. 40-1 at 10 (explaining that the parties' settlement "will have a long-term negative impact on the composition of the Appraisers Board and on AAREB's interest in promoting representation for racial minorities and other forms of inclusion on the Appraisers Board."); *id.* at 5 ("The weakening, or elimination, of either or both of the two provisions that are the subject of the litigation would directly impact AAREB's members and AAREB's ability to carry out its mandate of "Democracy in Housing.").

3

thus disproves the Association's justification for intervention.[5] Implications like the Association's that Alabama Governors would not appoint minority candidates without consideration of their races (i.e., on the basis of merit) is precisely why the Supreme Court declared in *SFFA* that "[e]liminating racial discrimination means eliminating all of it." 600 U.S. at 206; *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 241 (1995) (Thomas, J., concurring in part). Governor Ivey has taken great pride in appointing to public office Alabamians from all races, all walks of life, and all life experiences, and she doesn't need a quota to continue to do so.

\* \* \*

Because the Association's intervention would accomplish nothing, it should be denied.

Respectfully submitted,

Steve Marshall
  *Attorney General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

/s/ Benjamin M. Seiss
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7300
Fax: (334) 353-8400
Ben.Seiss@AlabamaAG.gov

***Counsel for Governor Ivey***

---

[5] For this reason, the Association's assertions that it will face prejudice arising from the "long-term negative impact on the composition of the Appraisers Board" and "representation for racial minorities and other forms of inclusion on the Appraisers Board" are incorrect. Doc. 40-1 at 10.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 3, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

/s/ Benjamin M. Seiss
*__Counsel for Governor Ivey__*
