IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KAY IVEY, in her official capacity as Governor of the State of Alabama,<br><br>　　　　Defendant. | Civil Action No. 2:24-cv-00104-RAH-JTA<br><br>**PLAINTIFF'S OPPOSITION TO ALABAMA ASSOCIATION OF REAL ESTATE BROKERS' MOTION TO INTERVENE** |

　　　　In this lawsuit, Plaintiff American Alliance for Equal Rights ("Alliance") claims that the requirement that the Alabama Real Estate Appraisers Board ("AREAB") must include at least two members "of a minority race" violates the Equal Protection Clause. *See* Doc. 1 ¶¶ 24–33 (Complaint); Ala. Code § 34-27A-4; Ala. Admin. Code 780-X-1-.02.[1] Defendant Governor of Alabama agrees that the challenged requirement "is an unconstitutional racial quota" that "is inconsistent with the U.S. Constitution" and that she accordingly "does not currently enforce and will not enforce in the future." Doc. 36 at 4. The Alliance and the Governor are engaged in good-faith discussions in an effort to resolve the case. *See* Doc. 38 at 1.

　　　　The Alabama Association of Real Estate Brokers ("Proposed Intervenor") now seeks to intervene as a defendant to support the racial quota and to prevent any resolution of this case by the parties. The motion to intervene should be denied. Proposed Intervenor fails to articulate any

---

[1] To the extent that it requires the Governor to discriminate against prospective applicants based on race, the Alliance also challenges the statement that "the overall membership of the [AREAB] shall be inclusive and reflect the racial … diversity of the state." Ala. Code § 34-27A-4; Ala. Admin. Code 780-X-1-.02. The Governor interprets this language as "not compel[ling] the appointment of any specific candidate or of any number of candidates on the basis of race." Doc. 36 ¶ 15.

1

protectable legal interest that supports its intervention as of right under Rule 24(a). Neither of its two asserted interests—"ensuring both [1] that the [AREAB] includes historically excluded racial minorities and [2] that an effort is made to include a range of perspectives"—qualifies as a direct, substantial, and legally protectible interest. Instead, Proposed Intervenor asserts only a general ideological interest in upholding the racial quota. That is insufficient for intervention.

Even if Proposed Intervenor had identified an adequate interest, this lawsuit will not prevent the Governor from appointing racial minorities to the AREAB, as shown by her recent nominations. Nor will it restrict her from including "a range of perspectives" in her appointment decisions. Similarly, the case will not interfere with Proposed Intervenor's education and advocacy efforts, including its ability to encourage its preferred candidates to seek nomination to the AREAB and to lobby the Governor to appoint those candidates. There is thus no practical impairment of Proposed Intervenor's asserted interests. At bottom, Proposed Intervenor seeks to intervene because it disagrees with the Governor's view of the Constitution. But its general ideological concern does not create a protectible interest justifying intervention as of right.

The Court should also deny permissive intervention under Rule 24(b). Proposed Intervenor's avowed purpose is to prevent early resolution of the case and to introduce evidence that it believes the parties will not. Allowing it to intervene is thus likely to cause increased delay and prejudice to the parties; permissive intervention should therefore be denied.

## LEGAL STANDARD

A party seeking to intervene as of right under Rule 24(a) must show, among other things, that it: "has an interest relating to the property or transaction which is the subject of the action" and "is so situated that disposition of the action, as a practical matter, may impede or impair [its] ability to protect that interest." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). This means that "intervention must be supported by a direct, substantial, legally protectible interest."

2

*Id.* (quotation omitted). In the Eleventh Circuit, "a legally protectable interest is an interest that derives from a legal right." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). To have such an interest, "the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

The Court has discretion to grant permissive intervention under Rule 24(b) for a party that "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), and where "the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley*, 425 F.3d at 1312. "If a proposed intervenor would add additional witnesses, delay the discovery process, require additional discovery, or otherwise prolong litigation, permissive intervention should be denied." *Vazzo v. City of Tampa*, No. 8:17-CV-2896-T-36AAS, 2018 WL 1629216, at *5 (M.D. Fla. Mar. 15, 2018) (citing cases). And even if the requirements of Rule 24(b) are otherwise satisfied, "the court may refuse to allow intervention." *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (quotation omitted).

**ARGUMENT**

**I.     Proposed Intervenor has not identified a legally protectable interest.**

Proposed Intervenor describes itself as a "trade association and civil rights organization for Black real estate professionals in Alabama." Doc 40-1 at 4. It claims that it engages in education and advocacy efforts and that it encourages its members to serve on public boards. *Id.* In support of its request for intervention, Proposed Intervenor asserts that it has two purported interests:

3

(1) ensuring "that the [AREAB] includes historically excluded racial minorities" and (2) ensuring "that an effort is made to include a range of perspectives" on the AREAB. *Id.* at 11.[2]

Neither of these is a "direct, substantial, legally protectible interest" that justifies Proposed Intervenor's intervention as of right. *Chiles*, 865 F.2d at 1213. The Eleventh Circuit has held that to satisfy the "legally protectible interest" standard, a proposed intervenor must identify some "substantive law" that "recognizes [the asserted interest] as belonging to or being owned by the applicant." *Mt. Hawley Ins. Co.*, 425 F.3d at 1311. Further, an applicant's asserted interest must be "an interest that derives from a legal right," *id.*, such that the applicant is "at least a real party in interest in … the subject of the proceeding," *Athens Lumber*, 690 F.2d at 1366.

Here, Proposed Intervenor fails to "identify any applicable substantive Alabama law to support [the] position" that a trade organization has a protectable legal right in appointments to a public board. *Braggs v. Hamm*, No. 2:14CV601-MHT, 2022 WL 10197657, at *2 (M.D. Ala. Oct. 17, 2022). The challenged statutory provision itself does not grant such a right. The statute only imposes obligations on the Governor, and it does not grant third parties any substantive rights. *See* Ala. Code § 34-27A-4. Put simply, the statute does not enable or require Proposed Intervenor or its members to do anything. *See Macon Cnty. Invs., Inc. v. Warren*, No. 3:06-CV-224-WKW, 2006 WL 2927470, at *3 (M.D. Ala. Oct. 12, 2006) (denying intervention where the proposed intervenor had "no substantively legal, legislatively granted right to participate"). Nor does Proposed Intervenor's "belie[f] that the two statutory requirements are lawful and enforceable," Doc. 40-1 at 9, grant it a legal right to intervene to defend those requirements. Proposed Intervenor is thus

---

[2] Although Proposed Intervenor also claims that it has members who are appraisers, a member who currently serves on the AREAB, and unspecified members who it speculates "may later" apply to serve on the AREAB, Proposed Intervenor does not assert that it has any different or more specific interests with respect to those members. Doc. 40-1 at 11.

similarly positioned to the coalition that was denied intervention in *Black Warrior Riverkeeper, Inc. v. Alabama Dep't of Transp.*, No. 2:11-CV-267-WKW, 2013 WL 1197010, at *2 (M.D. Ala. Mar. 25, 2013). Like that coalition, it "points to no substantive law suggesting" it has rights in the challenged requirement. *Id.* Even if Proposed Intervenor believes it "has good reasons to support" the statute, "it lacks a legally protectable interest." *Id.*

Additionally, Proposed Intervenor's asserted interests are generalized, not direct and substantial. A "general ideological interest in the lawsuit" is insufficient to justify intervention. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007). Because any member of the public who shares Proposed Intervenor's purported goal of increasing the number of racial minorities on a public board could assert these same interests, Proposed Intervenor has only a "generalized grievance" that does not support intervention as of right. *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990); *United States v. Alabama*, No. 2:06-cv-392, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006) ("Because the alleged interest could be claimed by any voter, the interest is only a general—not a direct and substantial—concern.").[3] The Eleventh Circuit decision in *Athens Lumber* is instructive. There, a corporation challenged the constitutionality of certain political spending restrictions. 690 F.2d at 1365. A union sought to intervene in support of the restrictions, claiming that if successful, the constitutional challenge would cause the union to "lose significant political ground." *Id.* at 1365–66. The Eleventh Circuit held that even if this "represents a genuine concern," intervention was unwarranted because the

---

[3] *See also Chiles*, 865 F.2d at 1212 ("[A]n intervenor's interest must be a particularized interest rather than a general grievance."); *United States v. Georgia*, No. 1:21-CV-02575-JPB, 2022 WL 61156, at *2 (N.D. Ga. Jan. 6, 2022) ("generalized interest in orderly elections" insufficient to justify intervention).

5

concern was too generalized. *Id.* at 1366. Likewise, Proposed Intervenor asserts only a generalized interest in the composition of the AREAB that is insufficient to justify intervention.

Proposed Intervenor's education and advocacy efforts do not change the calculus. *See* Doc. 40-1 at 4–5. As the Seventh Circuit has held, even an organization that has directly lobbied in support of a law that is being challenged does not thereby gain a sufficient interest to intervene to defend that law. *Keith v. Daley*, 764 F.2d 1265, 1269–70 (7th Cir. 1985) (lobbying organization's "communicative and persuasive" efforts did not justify intervention); *see also Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1499 (S.D. Fla. 1991) (adopting the reasoning of *Keith* and holding that a lobbying interest is insufficient to justify intervention in a constitutional challenge to a state statute). Here, Proposed Intervenor did not lobby in favor of the challenged provision, but instead claims only that it "advocates for a range of [similar] policies" and that it once opposed the repeal of a different provision for a different public board. Doc. 40-1 at 4–5. Such lobbying efforts may indicate a genuine interest in the outcome of this case, but they do not entitle Proposed Intervenor to intervention as of right.

Proposed Intervenor cites several cases that allowed intervention in challenges to race-conscious programs, but those are distinguishable on multiple grounds. In Proposed Intervenor's primary case, *Wooden v. Board of Regents of University System of Georgia*, the Eleventh Circuit did not even rule on the question of intervention, but simply noted in passing that some parties had "moved successfully to intervene"; that observation provides no substantive support to Proposed Intervenor. 247 F.3d 1262, 1268 (11th Cir. 2001).[4] The intervenors in the other cited cases were

---

[4] Proposed Intervenor claims that an unreported district court order found intervention appropriate because the litigation "would determine the racial composition of intervenors' future classes and prospective Black students' ability to have their race considered." Doc. 40-1 at 11. However, Proposed Intervenor did not provide a copy of the order and the Alliance has been unable to locate

individual students or other applicants who could be directly harmed by a decision; they were not trade or advocacy organizations like Proposed Intervenor. *See Grutter v. Bollinger*, 188 F.3d 394, 397 (6th Cir. 1999); *Sims v. Montgomery Cnty. Comm'n*, 887 F. Supp. 1479 (M.D. Ala. 1995), *aff'd without opinion*, 119 F.3d 9 (11th Cir. 1997); *Students for Fair Admissions Inc. v. Univ. of N.C.*, 319 F.R.D. 490, 493 (M.D.N.C. 2017); *Podberesky v. Kirwan*, 38 F.3d 147, 162 n.* (4th Cir. 1994). And *Students for Fair Admissions* undermines Proposed Intervenor's argument, since the court *denied* intervention as of right and only granted permissive intervention, and only for a limited purpose. 319 F.R.D. at 497. Additionally, all the other cited cases are out-of-circuit authority[5] except *Sims*, which did not address the standard for intervention but simply noted that white deputies had been allowed to intervene to challenge a sheriff's department's promotion practices (but not its hiring and recruitment standards). 887 F. Supp. at 1482 & n.4. None of these cases are sufficiently analogous to the situation here to persuasively support Proposed Intervenor's argument.

## II. Proposed Intervenor's interests will not be impaired by this lawsuit.

Even if Proposed Intervenor's asserted interests were direct, substantial, and legally protectable, they will not "as a practical matter" be impaired by this lawsuit. *Chiles*, 865 F.2d at 1213. A determination that the AREAB's racial requirement is unconstitutional will have no bearing on Proposed Intervenor's ability to further its asserted interests. First, even if successful, this lawsuit does not seek to and will not prevent the Governor from appointing racial minorities to the AREAB. None of the relief sought by the Alliance would require or forbid any particular

---

one. In any event, a student's interest in gaining University admission is very different from Proposed Intervenor's generalized interest in the composition of the AREAB.

[5] The Sixth Circuit in *Grutter* even noted that in contrast to the Eleventh Circuit, it applies a "rather expansive notion of the interest sufficient to invoke intervention of right." 188 F.3d at 398 (quoting *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir.1997)).

racial makeup of the AREAB or require the Governor to reduce the number of racial minorities on it. *See* Doc. 1 at 7. Moreover, even though the Governor considers the challenged provision to be an unconstitutional racial quota that she "does not currently enforce and will not enforce," Doc. 36 at 4, her recent nominations to the AREAB include three racial minorities—more than would be required by the challenged provision, *see* Doc. 20 at 6. That indicates that "as a practical matter," allowing Proposed Intervenor to intervene in favor of rigid adherence to a racial quota is unnecessary to avoid impairing its interest in having racial minorities on the AREAB.

Second, Proposed Intervenor's interest in promoting a "range of perspectives" on the AREAB will be unaffected by the outcome in this case. Elimination of the racial quota would not restrict the Governor's ability to appoint a diverse group of Alabamians who can provide a wide variety of perspectives. Moreover, varied perspectives are not a function of race, and to assume that one must be a racial minority to provide a different perspective would be to "engage[] in the offensive and demeaning assumption that [persons] of a particular race, because of their race, think alike." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 220–21 (2023) (quoting *Miller v. Johnson*, 515 U.S. 900, 911–912 (1995) (internal quotation marks omitted)).

Third, the outcome in this case will not affect Proposed Intervenor's education and advocacy efforts, including encouraging its members to seek nomination to public boards. *See* Doc. 40-1 at 11. Even if the racial quota is unenforceable, Proposed Intervenor can also lobby the Governor to appoint its members or other preferred candidates to the AREAB, or simply to encourage the appointment of racial minorities. As for Proposed Intervenor's argument that its "ability to later seek to *enforce*" the challenged racial requirement could be impaired by the outcome in this case, Doc. 40-1 at 13 (emphasis added), it is certainly true that an unconstitutional

racial quota would be unenforceable, but that does not create a sufficient impairment to require intervention here. Proposed Intervenor does not explain how it *could* "seek to enforce" the racial requirement—or have standing to do so. And given that the Governor has already nominated more than the required number of racial minorities, while also considering the racial quota unconstitutional, there is nothing to "enforce." In any event, the possibility that the challenged provision could be found unconstitutional does not convert Proposed Intervenor's general ideological support for it into an interest that is legally protectable.[6]

### III. The Court should deny permissive intervention.

In the alternative, Proposed Intervenor seeks permissive intervention. This Court should deny that request. As the Eleventh Circuit has recognized, "the introduction of additional parties inevitably delays proceedings." *Athens Lumber Co.*, 690 F.2d at 1367. That does not mean that permissive intervention is never appropriate, but here the danger of delay and prejudice is particularly acute. Proposed Intervenor's avowed purpose in seeking intervention is to prevent any "resol[ution of] this lawsuit in its early stages" and to engage in "discovery to develop the record" that it thinks the existing parties will not. Doc. 40-1 at 10, 14. As the Chief Justice has noted, "[i]ntervenors do not come alone—they bring along more issues to decide" and "more discovery requests." *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, J., concurring and dissenting). Given that Proposed Intervenor affirmatively seeks to delay and complicate the case, the Court should deny permissive intervention.

### CONCLUSION

The Court should deny Proposed Intervenor's motion to intervene.

---

[6] Because Proposed Intervenor fails to satisfy the interest and impairment requirements, the Court need not address other requirements for intervention as of right.

DATED: May 3, 2024.

                    Respectfully submitted,

                    <u>/s/ Glenn E. Roper</u>
                    GLENN E. ROPER*
                    Colo. Bar No. 38723
                    Pacific Legal Foundation
                    1745 Shea Center Drive, Suite 400
                    Highlands Ranch, Colorado 80129
                    Telephone: (916) 503-9045
                    GERoper@pacificlegal.org

                    JOSHUA P. THOMPSON*
                    Cal. Bar No. 250955
                    Pacific Legal Foundation
                    555 Capitol Mall, Suite 1290
                    Sacramento, California 95814
                    Telephone: (916) 419-7111
                    JThompson@pacificlegal.org

                    *Pro Hac Vice*

                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 3, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

/s/ Glenn E. Roper
GLENN E. ROPER
*Attorney for Plaintiff*
