IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>KAY IVEY, in her official capacity as Governor of the State of Alabama,<br><br>Defendant,<br><br>ALABAMA ASSOCIATION OF REAL ESTATE BROKERS, a nonprofit corporation,<br><br>Intervenor-Defendant. | Civil Action No. 2:24-cv-00104-RAH-JTA<br><br>**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Pursuant to Federal Rule of Civil Procedure 12(c), Plaintiff American Alliance for Equal Rights (Alliance) moves for an entry of judgment on the pleadings. The Alliance brought this lawsuit to challenge the statutory and regulatory requirement that the Alabama Real Estate Appraisers Board (AREAB) must include at least two members "of a minority race." Ala. Code § 34-27A-4; Ala. Admin. Code 780-X-1-.02.[1] The pleadings are now closed, and they do not raise any disputed issues of material fact. *See* Doc. 1 (Complaint); Doc. 36 (Defendant's Answer); Doc. 55 (Intervenor's Answer). Instead, they raise only a legal question: Does the racial quota in Alabama Code § 34-27A-4 and Alabama Administrative Code 780-X-1-.02 violate the Equal Protection Clause?

---

[1] The Alliance also challenged the broader requirement that AREAB appointments "shall be inclusive and reflect the racial … diversity of the state," Ala. Code § 34-27A-4; Ala. Admin. Code 780-X-1-.02, to the extent that it requires the Governor to discriminate against prospective appointees based on their race. The Governor interprets this language as not requiring any such discrimination. Doc. 36 at 5 ¶ 15. For purposes of securing a quick resolution of this matter, Plaintiff is willing to accept the Governor's interpretation and forgo its challenge to this language.

1

The answer to that question is yes. Defendant Governor of Alabama—who is charged with implementing the statute and making appointments to the AREAB—agrees that the challenged requirement "is an unconstitutional racial quota" that "is inconsistent with the U.S. Constitution." Doc. 36 at 4 ¶ 1. Intervenor Alabama Association of Real Estate Brokers, however, asserts that the challenged racial requirement is "valid and enforceable." Doc. 55 at 5. As explained below, because the requirement does not satisfy strict scrutiny, this Court should hold that it violates the Equal Protection Clause and issue a judgment in the Alliance's favor.

## BACKGROUND

The Alabama legislature established the AREAB in 1990. *See Real Estate Appraisers Act*, 1990 Alabama Laws Act 90-639, p. 1175, § 4. It did so in response to the newly enacted Federal Financial Institutions Reform, Recovery and Enforcement Act (FFIRREA), which provided that any state "may establish a State appraiser certifying and licensing agency" for the purpose of "assur[ing] the availability of State certified and licensed appraisers for the performance in a State of appraisals in federally related transactions and to assure effective supervision of the activities of certified and licensed appraisers." Pub. L. No. 101-73, § 1117, 103 Stat. 183 (1989), *codified at* 12 U.S.C. § 3346. The AREAB's enabling statute included a requirement that "two of [the] nine board members shall be of a minority race." 1990 Alabama Laws Act 90-639, p. 1175, § 4. In 2004, the statute was amended to change "two" to "[n]o less than two," but this racial requirement has been a constant feature of the AREAB from the beginning. *See Professions and Businesses— Real Estate Appraisers—Licensing and Regulation*, 2004 Alabama Laws Act 2004-525, p. 1093, § 1.[2]

---

[2] Pursuant to the state Sunset Law, the Alabama legislature regularly reauthorizes the AREAB, most recently through October 2028. *See* 2024 Alabama Laws Act 2024-149 (S.B. 114).

2

The Alliance brought this lawsuit under 42 U.S.C. § 1983 to challenge the racial requirement in the statute and its corresponding regulation as a violation of the Fourteenth Amendment's Equal Protection Clause. Doc. 1 ¶¶ 15–16, 24–33. Shortly after the Complaint was filed, the Governor sent a set of new AREAB nominations to the Senate. *See* Doc. 11 at 2. The Alliance sought a temporary restraining order and preliminary injunction to prevent those nominations from potentially depriving the Court of jurisdiction. *See id.* at 1–3. In denying the motion, the Court held that there was no need for a TRO or preliminary injunction because the Alliance "had standing to pursue its equal protection claim at the initiation of the lawsuit, it has standing now, and it will have standing if [the Governor's appointments are] confirmed." Doc. 30 at 9. The Governor's nominations to the AREAB were confirmed by the Senate on May 7 and 8, 2024. *See* https://alison.legislature.state.al.us/confirmations (bill numbers SCF71–79).

The Governor's Answer agrees that the statute's racial requirement "is an unconstitutional racial quota." Doc. 36 at 4 ¶ 1. She further admits that the requirement does not serve a compelling government interest, does not remediate any specific instances of racial discrimination, and is not narrowly tailored to remediating past, intentional discrimination. *Id.* at 3–4, ¶¶ 30–33. In contrast, Intervenor's Answer argues that "the challenged provisions are valid and enforceable." Doc. 55 at 5. Intervenor's position is that a racial requirement for AREAB appointments "is necessary to correct for the legacy of racial discrimination that still impacts Black Alabamians, including real estate professionals and home buyers." Doc. 40-1 at 12–13.

## LEGAL STANDARD

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The analysis is similar to a motion to dismiss under Rule 12(b)(6), and "judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301

3

(11th Cir. 2001). In considering a 12(c) motion, a court should construe the pleadings in the light most favorable to the nonmovant. *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). But it need not accept the nonmovant's conclusory allegations or legal conclusions. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where a plaintiff is the party seeking judgment on the pleadings, the Court should take the allegations in the complaint as true "where and to the extent that they do not conflict with those of the answer." *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187 (N.D. Ga. 1978), *aff'd*, 673 F.2d 1178 (11th Cir. 1982). A nonmovant may defeat a motion for judgment on the pleadings if "the answer raises issues of fact which if proved would defeat recovery." *Id.* at 188.

## ARGUMENT

**I.      The racial requirement for appointments to the AREAB is unconstitutional.**

The "core purpose" of the Equal Protection Clause is "doing away with all governmentally imposed discrimination based on race." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206 (2023) ("*SFFA*") (cleaned up) (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)); *see also id.* at 214 ("Racial discrimination is invidious in all contexts.") (cleaned up) (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991)). Thus, the Supreme Court has "consistently denied the constitutionality of measures which restrict the rights of citizens on account of race." *Id.* at 205 (quoting *Loving v. Virginia*, 388 U.S. 1, 11–12 (1967)). To satisfy the Constitution, a statute or regulation that discriminates based on race must "survive a daunting two-step examination" of strict scrutiny. *Id.* at 206. That is, the statute's racial discrimination must (1) further a compelling government interest (2) in a manner that is "'narrowly tailored'—meaning 'necessary'—to achieve that interest." *Id.* at 206–07 (quoting *Fisher v. Univ. of Tex.*, 570 U.S. 297, 311–12 (2013)).

4

Here, the challenged statute and regulation racially discriminate by requiring that "no less than two" AREAB seats be filled only by individuals "of a minority race," meaning that applicants who are not racial minorities are excluded from those seats. Ala. Code § 34-27A-4. Therefore, the challenged statute and regulation are subject to strict scrutiny. And they fail both prongs.

***First***, there is no compelling interest that justifies this race-based distinction. The compelling interest requirement is designed to "assur[e] that the legislative body is pursuing a goal important enough to warrant use of a highly suspect tool." *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1564–65 (11th Cir. 1994) (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989) (plurality op.)). Under current Supreme Court precedent, there are only two recognized interests that can be sufficiently compelling to allow the government to treat individuals differently based on race: (1) "remediating specific, identified instances of past discrimination that violated the Constitution or a statute," and (2) "avoiding imminent and serious risks to human safety in prisons." *SFFA*, 600 U.S. at 207.

The second of these interests is obviously not present here. But neither is the first. Because the racial quota was part of the AREAB from its inception, there is no history of racial discrimination in AREAB appointments that the quota could have been intended to remedy. *See Real Estate Appraisers Act*, 1990 Alabama Laws Act 90-639, p. 1175, § 4. And rather than having anything to do with remedying past racial discrimination—let alone discrimination "that violated the Constitution or a Statute," *SFFA*, 600 U.S. at 207—the AREAB was established in response to Congress's call for state agencies that could assure certified and licensed appraisers for federally related transactions. *See* Pub. L. No. 101-73, § 1117, 103 Stat. 515 (1989), *codified at* 12 U.S.C. § 3346; *see also Real Estate Appraisers Act*, 1990 Alabama Laws Act 90-639, § 31 (stating that it is the "intent of the legislature . . . that this act fully comply with the provisions of the [FFIRREA],

5

any amendments thereto and regulations issued thereunder"). There is thus no compelling interest in remedying past discrimination that could support the challenged racial quota.

Intervenor has not identified any specific instances of government discrimination in appointments to the AREAB that could justify the racial quota. Instead, it points only to a "legacy of racial discrimination in housing and lending in Alabama." Doc. 40-1 at 5. But "a generalized assertion that there has been past discrimination in an entire industry provides no guidance for a legislative body to determine the precise scope of the injury it seeks to remedy." *Croson*, 488 U.S. at 498. Allegations of general discrimination in an industry cannot rise to the level of a compelling government interest. *See id.*; *see also SFFA*, 600 U.S. at 226; *Back v. Carter*, 933 F. Supp. 738, 755 (N.D. Ind. 1996) ("The courts have found adequate remedial purposes only when the government can show that the classification is a response to specific instances of prior discrimination."). Nor is a history of *societal* discrimination sufficient to justify race-based state action. *SFFA*, 600 U.S. at 226; *Ensley*, 31 F.3d at 1552, 1565 (an "'amorphous claim' of societal discrimination" is insufficient).

**Second**, even if there were a compelling interest that could justify racial discrimination in appointments to the AREAB, any such considerations must be narrowly tailored to ensure that the use of racial preferences is a "last resort." *Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade Cnty.*, 122 F.3d 895, 926 (11th Cir. 1997). The narrow tailoring inquiry "must be intrusive, and focused very closely and in a very precise way on the specific terms of the regulation or policy under review, because only with that kind of searching examination can a court ensure that the defendant's use of race is truly as narrow as the Constitution requires." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1251 (11th Cir. 2001). Here, a "searching examination" shows that the AREAB's racial requirement is not narrowly tailored in at least four independent ways:

6

- First, the statute and regulation contain a rigid racial requirement with no flexibility. *See Johnson*, 263 F.3d at 1255 (finding no narrow tailoring where the government used a "rigid, mechanical approach to considering race"). Regardless of the level of past or present discrimination, and regardless of current circumstances, there must always be "no less than two" racial minorities on the AREAB. Thus, under the statute and regulation, the Governor *must* fill an opening on the board with a racial minority if there are fewer than two racial minorities already on the AREAB.

- Second, the quota includes all racial minority groups, even those for which there is no evidence of past discrimination. *See Croson*, 488 U.S. at 506 (the "random inclusion of racial groups" demonstrates that a program is not narrowly tailored). Thus, even accepting Intervenor's claim that Alabama has a compelling interest in "correct[ing] for the legacy of racial discrimination that still impacts Black Alabamians," Doc. 40-1 at 12, a racial quota is not narrowly tailored to that interest if it can be satisfied by appointees who are Chinese, Brazilian, Native American, or any other minority race. This "suggests"—if not conclusively establishes—that Alabama's purpose in creating the AREAB's racial requirement "was not in fact to remedy past discrimination" against members of an identified group. *Croson*, 488 U.S. at 506.

- Third, the narrow tailoring analysis requires Alabama to engage in "serious, good faith consideration of workable race-neutral alternatives" that would allow it to achieve whatever interest it believes to be compelling. *Grutter v. Bollinger*, 539 U.S. 306, 339 (2003). This will ordinarily involve proof that the legislature "carefully examined and rejected race-neutral alternatives." *Croson*, 488 U.S. at 507. Yet here, there is no indication that Alabama considered any race-neutral alternatives before selecting a blanket policy of requiring two racial minorities on the AREAB. *See Virdi v. DeKalb Cnty. Sch. Dist.*, 135 F. App'x 262, 268 (11th Cir. 2005) (finding

7

no narrow tailoring where "there is no evidence that the District considered race-neutral alternative means"); *Johnson*, 263 F.3d at 1259 (concluding that the defendant "fails to show on this record that it meaningfully considered, let alone rejected as insufficient, any wholly race-neutral alternatives to the [challenged] race-conscious admissions policy").

- Fourth, the challenged racial discrimination in appointments to the AREAB has no "logical end point." *SFFA*, 600 U.S. at 212 (quoting *Grutter*, 539 U.S. at 342).[3] This requirement is "critical" because "'deviation from the norm of equal treatment' must be 'a temporary matter.'" *Id.* (quoting *Grutter*, 539 U.S. at 342). Government programs that discriminate on the basis of race "must comply with strict scrutiny … and—at some point—they must end." *Id.* at 213. Because the challenged statute and regulation establish a perpetual racial quota with no end point, they are not narrowly tailored.

Because there is no compelling government interest and the statute and regulation are not narrowly tailored to address discrimination, they violate the Equal Protection Clause.

## II. There are no unresolved questions of material fact.

As discussed above, the only issue in this case is a straightforward legal question that can be decided based on the statute, the statutory history, the accompanying regulation, and the pleadings. There is no need for further factual development and no disputed factual issues which, if proved, would defeat a judgment in favor of the Alliance.

Intervenor's primary factual assertion is that there is a history of discrimination in housing and the real estate industry in Alabama, which it argues justifies racial discrimination in AREAB

---

[3] The Proposed Answer that Intervenor filed with its intervention motion "[a]dmitted that Ala. Code § 34-27A-4 and Ala. Admin. Code 780-X-1-.02 do not include an 'end date.'" Doc. 40-3 at 4 ¶ 33. Although Intervenor's Answer removed that concession, *see* Doc. 55 at 5, the lack of an end date is obvious from the face of the statute and regulation.

appointments. In support of that argument, it states that there is a "history and continued impact of discrimination in all facets of the real estate industry in Alabama, including in licensing and appraisals." Doc. 40-2 at 3 ¶ 17. Thus, it argues racially discriminatory appointments to the AREAB are "needed to correct for the legacy of racial discrimination in housing and lending in Alabama." *Id.* ¶ 16.

But even granting the truth of Intervenor's assertions, that does not create any dispute of material fact. As noted above, the Supreme Court has established that general discrimination in an industry does not create a compelling interest for state-sponsored racial discrimination. *See Croson*, 488 U.S. at 469. Nor does a history of societal discrimination create a compelling interest that could justify race-based state action. *SFFA*, 600 U.S. at 226; *Ensley*, 31 F.3d at 1552, 1565. Instead, there must be a specific showing of illegal government discrimination as to the subject of the law; here, the AREAB. *See Croson*, 488 U.S. at 505–06; *see also SFFA*, 600 U.S. at 207 (noting the need to establish "specific, identified instances of past discrimination *that violated the Constitution or a statute*") (emphasis added). There is no history of discrimination against racial minorities in appointments to the AREAB (and Intervenor has identified none), as the racial quota was part of the statute from its inception. And even if Intervenor's assertions of past discrimination in the real estate industry could create an issue of disputed fact as to the compelling interest prong, that would not affect the statute's obvious and fatal lack of narrow tailoring. Thus, there is no dispute as to any material fact that would prevent judgment for the Alliance.[4]

---

[4] Intervenor's Answer mentions standing as an affirmative defense, Doc. 55 at 5, but the issue of standing has already been litigated and decided. *See* Doc. 30 at 9 (holding that the Alliance "had standing to pursue its equal protection claim at the initiation of the lawsuit, it has standing now, and it will have standing if [the Governor's appointments are] confirmed"). When an intervenor joins a case, it "must accept the proceedings as [it] finds them"—it has "no right to relitigate the issues." *In re Fontainebleau Las Vegas Holdings, LLC*, No. 09-23683-CIV, 2010 WL 11721026,

9

## CONCLUSION

The Court should grant the Alliance's motion for judgment on the pleadings and enter judgment in its favor.

DATED: May 20, 2024.

                                          Respectfully submitted,

                                          /s/ Glenn E. Roper
                                          GLENN E. ROPER*
                                          Colo. Bar No. 38723
                                          Pacific Legal Foundation
                                          1745 Shea Center Drive, Suite 400
                                          Highlands Ranch, Colorado 80129
                                          Telephone: (916) 503-9045
                                          GERoper@pacificlegal.org

                                          JOSHUA P. THOMPSON*
                                          Cal. Bar No. 250955
                                          Pacific Legal Foundation
                                          555 Capitol Mall, Suite 1290
                                          Sacramento, California 95814
                                          Telephone: (916) 419-7111
                                          JThompson@pacificlegal.org

                                          *Pro Hac Vice*

                                          *Attorneys for Plaintiff*

---

at *3 (S.D. Fla. July 27, 2010) (quoting *Petition of Geisser v. United States*, 554 F.2d 698, 705 n.6 (5th Cir. 1977)). Thus, the only relevant remaining dispute is as to the merits.

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

/s/ Glenn E. Roper
GLENN E. ROPER
*Attorney for Plaintiff*
