# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation, ) ) ) ) | |
| *Plaintiff*, ) ) | **Civil Action No.:** |
| ) | **2:24-cv-00104-RAH-JTA** |
| v. ) ) | |
| KAY IVEY, *in her official capacity as Governor of the State of Alabama*, ) ) ) | |
| *Defendant*. | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant has consistently maintained that Ala. Code § 34-27A-4 and Ala. Admin. Code r. 780-X-1-.02's requirement that at least two members of the Alabama Real Estate Appraisers Board be "of a minority race" violates the Fourteenth Amendment. *See* doc. 20 at 12–13 (PI Response); doc. 36 (Answer).[1] Unsurprisingly, Defendant does not oppose Plaintiff's Motion on the merits.[2]

---

[1] However, Defendant has also consistently maintained that the hortative language requiring the Board to "be inclusive and reflect the . . . diversity of the state[,]" ALA. CODE § 34-27A-4; ALA. ADMIN. CODE r. 780-X-1-.02, *does not* violate the Fourteenth Amendment, *see* doc. 20 at 13–14; doc. 36 at 5. *Contra* doc. 54 at 2 & n.1 (citing both the quota and the general diversity language: "Both sides seem to agree that the racial mandate at issue violates the Equal Protection Clause"). As noted in Plaintiff's Motion, AAER "forgo[es]" its challenge" to the general diversity language.

[2] Defendant preserves her jurisdictional arguments. In short, because Defendant has refused to enforce the quota, doc. 36 at 4, Plaintiff cannot prove "a real and immediate . . . threat of *future* injury[,]" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013). This case does not resemble those where the federal government agrees with the plaintiff on the merits

Defendant agrees with Plaintiff that this case should be resolved at the pleadings stage. The sole question is legal: whether the racial quota complies with the Fourteenth Amendment. *Accord* doc. 56 at 1. Because the quota is subject to strict scrutiny, Intervenor's burden—in this context—is to show that there are material facts in dispute or that Plaintiff is not entitled to judgment as a matter of law as to whether the explicit, absolute racial quota is "narrowly tailored to remedy the effects of prior discrimination." *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989); *see also Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 206–07 (2023) [hereinafter, *SFFA*]. Intervenor cannot show either: its Answer does not raise a dispute of material fact as to how strict scrutiny plays out here, and Supreme Court precedent is clear that Plaintiff is correct as a matter of law.

To justify a race-based remedy, the "prior discrimination" cannot be generalized "societal discrimination." *SFFA*, 600 U.S. at 226. Nor can "an amorphous claim that there has been past discrimination in a particular industry . . . justify the use of an unyielding racial quota"—because such a justification "has no logical

---

but props up Article III jurisdiction by maintaining adversity (e.g., by continuing to enforce the challenged provision). *See United States v. Windsor*, 570 U.S. 744, 758–59 (2013) ("In short, even where the Government largely agrees with the opposing party on the merits of the controversy, there is sufficient adverseness and an adequate basis for jurisdiction in the fact that the Government intended to enforce the challenged law against that party." (cleaned up) (citing *INS v. Chadha*, 462 U.S. 919, 940 n.12 (1983))); *cf. Seila Law LLC v. CFPB*, 591 U.S. 197, 212–13 (2020). In the absence of subject-matter jurisdiction, this suit would be due for dismissal.

stopping point" and thus "provides no guidance for a legislative body to determine the proper scope of the injury it seeks to remedy[,]" *Croson*, 488 U.S. at 498, 500 (citing *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 275 (1986) (plurality op.)).

Instead, for Intervenor to defeat Plaintiff's Motion, it must—at a minimum[3]—point to "identified discrimination in the [Alabama] [real estate appraising] industry." *Id.* at 505; *cf. id.* at 504 ("While the States and their subdivisions may take remedial action when they possess evidence that their own spending practices are exacerbating a pattern of prior discrimination, they must identify that discrimination, public or private, with some specificity before they may use race-conscious relief."). Nowhere does Intervenor's Answer do so—let alone suggest that the Legislature employed the quota to remedy that (unidentified) discrimination. This identification is "especially important" "[b]ecause racial characteristics so seldom provide a relevant basis for disparate treatment, and because classifications based on race are potentially so harmful to the entire body politic[.]" *Id.* at 505. At best, Intervenor has denied Plaintiff's allegation that the quota remedies any specific instances of discrimination, *see* doc. 55 ¶ 31, and referenced (in a motion) "the legacy of racial discrimination in housing and lending in Alabama[,]" doc. 40-1 at 5; *accord* doc. 40-2 ¶ 17, but neither carry the day under *Croson* to justify a race-conscious remedy.

---

[3] At a maximum, Intervenor would have to point to identified discrimination in the Board's appointment process. Of course, a quota adopted at the Board's inception could not possibly remediate discrimination that occurred afterward.

3

With this Supreme Court precedent in mind, Intervenor's requested discovery topics would not move the needle either. *See* doc. 57 at 4 (listing six subjects Intervenor says discovery will be needed on). Of course, the two subjects about Plaintiff's standing are irrelevant to the merits. As to the remaining four, discovery would not uncover evidence that could satisfy strict scrutiny. The Board's "recruitment, nominations and appointment process[,]" current and past members' "identities, demographics, and other information[,]" and the Board's functions and activities (information that post-dates the quota) could not have been used to justify a quota at the Board's inception. *See* doc. 57 at 4–5. While the "history of racial . . . discrimination in . . . appraising"[4] might be relevant under *Croson*, Intervenor could not establish that the Legislature "clearly identified" that hypothetical discrimination as the basis for the quota. Intervenor's Answer certainly doesn't establish such, which would be an uphill battle anyway given that the Board (and thereby the contemporaneously adopted quota) was established to answer the (non-racial) call of Congress. *See* doc. 56 at 5–6.

That being said, the hypothetical best possible evidence Intervenor could dig up on the existence of a compelling governmental interest says nothing about

---

[4] "The history of racial . . . discrimination in board appointments, licensure, regulation, housing, lending, . . ., and other activities that affect real estate values and homeownership in Alabama[,]" doc. 57 at 5, is no more than an insufficient "generalized assertion that there has been past discrimination in an entire industry[,]" which has "no logical stopping point[,]" *Croson*, 488 U.S. at 498 (citing *Wygant*, 476 U.S. at 275). And of course, the history of "other" discrimination (i.e., non-racial discrimination), doc. 57 at 5, is entirely irrelevant to remedying prior racial discrimination.

whether that interest is narrowly tailored to justify an unyielding racial quota. It was already "obvious" to the Supreme Court back in 1989 that "an absolute preference over other citizens based solely on their race" was "not narrowly tailored to remedy the effects of prior discrimination[,]" *Croson*, 488 U.S. at 508—let alone after *SFFA*. The same goes for an absolute preference for minority candidates for the Board. Plaintiff's tailoring discussion further confirms that Intervenor could not establish that the quota satisfies struct scrutiny. *See* doc. 56 at 6–8.

\*   \*   \*

Intervenor's Answer does not establish a dispute of material fact; nor could Intervenor carry its burden to show that Plaintiff's claim fails as a matter of law given Supreme Court precedent that an unyielding racial quota does not satisfy strict scrutiny. Assuming the Court has jurisdiction, Plaintiff's Motion for Judgment on the Pleadings should be granted.

Respectfully submitted,

Steve Marshall
  *Attorney General*

James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*

/s/ Benjamin M. Seiss
Brenton M. Smith (ASB-1656-X27Q)
Benjamin M. Seiss (ASB-2110-O00W)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue

5

        Montgomery, Alabama 36104
        Telephone: (334) 242-7300
        Fax: (334) 353-8400
        Jim.Davis@AlabamaAG.gov
        Brenton.Smith@AlabamaAG.gov
        Ben.Seiss@AlabamaAG.gov

        ***Counsel for Governor Ivey***

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court via CM/ECF which will send notification to all counsel of record.

/s/ Benjamin M. Seiss
*Counsel for Governor Ivey*