IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, | ) ) ) |
| Plaintiff, | ) ) Case No. 2:24-cv-104-RAH ) [WO] |
| v. | ) ) |
| KAY IVEY, *in her official capacity as* *Governor of the State of Alabama*, | ) ) ) |
| Defendant, | ) ) |
| v. | ) ) |
| ALABAMA ASSOCIATION OF REAL ESTATE BROKERS, | ) ) ) |
| Intervenor Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

American Alliance for Equal Rights (Alliance) is on a sprint through a marathon. It moves for judgment on the pleadings, a tricky shortcut to final judgment. In its haste, the Alliance has tripped over a technical legal standard, so now all here must endure some discovery.

Both Governor Kay Ivey and the Alabama Association of Real Estate Brokers (Brokers Association) contend the Alliance lacks Article III standing to maintain this action. Beyond that, the Governor does not resist judgment on the pleadings, but the Brokers Association does. The Alliance's challenge to the Inclusivity Requirement is no longer fit for resolution and, because the Governor and Brokers Association

1

raise material disputes of fact relevant to Laura Clark's (and therefore the Alliance's) standing, judgment on the pleadings will be denied.

## II. BACKGROUND

The underlying facts remain unchanged since the Court last wrote. (*See* doc. 30; doc. 54.) To set the scene, an Alabama statute obliges the Governor to appoint no fewer than two members of a minority race to a public regulatory board. Call that the Mandate. Ala. Code § 34-27A-4; Ala. Admin. Code § 780-X-1-.02 ("no less than two of the nine [Alabama Real Estate Appraisers Board (Board)] members shall be of a minority race"). The same statute goes on to say that the Board's membership must be inclusive, reflecting Alabamians' varied characteristics—race among them. Call this the Inclusivity Requirement. *Id.* ("[t]he overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state").

The question on the merits is whether either command violates the Equal Protection Clause, U.S. Const. amend. XIV. Conspicuously divided along racial lines, the Alliance, on behalf of its white member Laura Clark, initially said yes, of course both do; the Brokers Association, a trade association and civil rights organization for black real estate professionals, says no, not a chance. To keep it interesting, the Governor says the Mandate is invalid (and that she will not enforce it), but the Inclusivity Requirement is not. The Alliance ultimately jumped on her bandwagon during the litigation, eyeing a speedy judgment.

Like the underlying facts, little of the procedural history has changed since the Court last wrote. The Governor has filed her Answer (doc. 36) to the Complaint (doc. 1), and so did the Brokers Association (doc. 55). The pleadings are closed, and the Alliance seeks judgment on them. (Doc. 56.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings are closed for purposes of Rule 12(c) when the complaint and answer(s) have been filed. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014) (citations omitted). A Rule 12(c) motion "provides 'a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings[.]'" *Id.* (third alteration added) (citation omitted).

A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). The Court "accept[s] as true all material facts alleged in the non-moving party's pleading, and [it] view[s] those facts in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335 (citation omitted). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.* (citation omitted). Judgment on the pleadings can be granted "only if the non-movant can prove no set of facts which would allow it to prevail." *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1303 (11th Cir. 2005) (citation and internal quotation marks omitted).

## IV. DISCUSSION

### A. The Pleadings

Judgments on the pleadings are peculiar creatures. They short-circuit the ordinary course of litigation—bypassing discovery, motions for summary judgment, a trial, post-trial motions—skipping all the way to final judgment based on the complaint, answer(s), and any appropriate papers that accompany them. It is a

procedural vehicle that is rarely invoked and seldom granted; probably because it is not all that difficult for a non-moving party to defend itself against the attack. All the non-moving party must do is point to a "material dispute of fact" in the pleadings for it to fight another day. *Perez*, 774 F.3d at 1335.

What is a material dispute of fact? A fact is not a legal conclusion (even though a fact might support a legal conclusion), and a fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted). Unlike the legal standard that applies at summary judgment, which tests whether a dispute of material fact is "genuine," Fed. R. Civ. P. 56, under Rule 12(c) the nonmoving party need only show its answer to the complaint denies or otherwise disputes a factual allegation material to the outcome of the case. *See Perez* 774 F.3d at 1335; *Capitol Specialty Ins. Corp. v. West View Apartments, Inc.*, No. 21-11675, 2021 WL 6101663, at *1 (11th Cir. Dec. 22, 2021) (per curiam) (reversing district court's judgment on the pleadings because the district court accepted the allegations of the complaint—the pleading of the movant—instead of the answer—the pleading of the nonmovant—as true).

To decide the Alliance's motion, then, the Court must compare the Complaint and the Answers side-by-side. Since the Alliance is the movant, the Answers are taken as true and viewed in the light most favorable to the Governor and Brokers Association. This task is mechanical, and it hinges more on the savviness of the lawyers than much of anything else.

The Complaint contains just one facial challenge, a most disquieting and disfavored legal maneuver.[1] *See generally Moody v. NetChoice, LLC*, 144 S. Ct. 2383 (2024). Defending against judgment on the pleadings, both the Governor and

---

[1] As discussed below, the Alliance has withdrawn its challenge to the Inclusivity Requirement, so only its challenge to the Mandate remains.

the Brokers Association hold fast to their contention that the Alliance lacks Article III standing. (Doc. 36 at 4–5; doc. 55 at 5; doc. 62 at 1 n.2; doc. 66 at 5, 7–10.) Beyond that, the Governor admits the Alliance is correct on the merits of its challenge to the Mandate (doc. 36 at 3–4), but the Brokers Association argues discovery is required to ferret out an appropriate compelling interest to support the Mandate (doc. 66 at 11–14). The Brokers Association, notably, has so far been unable to clearly articulate what that appropriate compelling interest might be. But setting that aside for now, on to the side-by-side comparison of the pleadings.

Jumping first to the Alliance's allegations on the merits of its facial challenge, it says the Mandate "does not serve a compelling government interest" (doc. 1 at 6 ¶ 30); "does not remediate any specific instances of racial discrimination that violated the Constitution or statutes" (*id.* at ¶ 31); "[e]ven if" the Mandate "served a compelling government interest, it is not narrowly tailored to remediating past, intentional discrimination" (*id.* at ¶ 32); and the Mandate "stereotypes individuals on the basis of race, mandates racial quotas, requires racial balancing, has no 'good faith exception,' and has no end date" (*id.* at ¶ 33). The Governor admitted all four allegations (although she denied the assertions in Paragraph 33 of the Complaint that state the Mandate "requires racial balancing" and "mandates racial quotas"). (Doc. 36 at 3–4 ¶¶ 30–33.) The Brokers Association merely wrote "Denied" next to each of the four allegations in its Answer. (Doc. 36 at 4–5 ¶¶ 30–33.)

Since all four of the Alliance's allegations in this group are legal conclusions and not facts, the Brokers Association did not raise a material dispute of fact per se. If those were the only allegations gatekeeping a decision on the merits, the Court might have pressed on and resolved the Alliance's facial challenge. But the allegations do not stop there. And giving a charitable—but not necessarily required—view of these allegations to the Brokers Association (yes, charitable even when viewing the allegations in the light most favorable to it, as required), implicit

5

in the Alliance's four merits allegations is its belief that no set of facts could allow the Mandate to withstand strict scrutiny, thus no factual allegations are required to support its legal conclusions. Through its denial of the allegations, the Brokers Association implies facts do exist to support the Mandate's constitutional validity and, therefore, a material dispute of fact exists. That reading of the pleadings is a stretch. But the parties will be allowed some discovery, if for no other reason than the material dispute fact concerning the next category of allegations.

On standing, the Alliance alleged four critical facts.[2] First, the Alliance says it "has one or more members who are not racial minorities and who are qualified, ready, willing, and able to be appointed as public members of [the Board], including Member A." (Doc. 1 at 5 ¶ 20.) Both the Governor and Brokers Association "lack[] sufficient knowledge or information to admit or deny" this allegation and "thus den[y]" it. (Doc. 36 at 2 ¶ 20; doc. 55 at 3–4 ¶ 20.) Second, the Alliance alleges, "Member A is a member of the Alliance and an adult citizen of Alabama who resides in Prattville. She is not a member of any racial minority group and does not identify as a racial minority. Member A is a staunch believer in and advocate for the importance of both public service and protecting constitutional rights, including property rights." (Doc. 1 at 5 ¶ 21.) Again, both the Governor and Brokers

---

[2] With Member A, later identified in the pleadings as Laura Clark, a resident of Prattville, Alabama (*see* doc. 1 at 5), as its linchpin, the Alliance relies on associational standing to prop up its lawsuit. Associational standing requires the Alliance to show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 199 (2023). To show Ms. Clark has standing to sue in her own right, the Alliance must show she has (1) suffered an "injury in fact" that is both (2) fairly traceable to the defendant's conduct and (3) redressable by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992). To qualify for injury-in-fact status, a plaintiff's injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotation marks and citations omitted).

6

Association "lack[] sufficient knowledge or information to admit or deny" the allegation and "thus den[y]" it. (Doc. 36 at 3 ¶ 21; doc. 55 at 4 ¶ 21.) Third, the Alliance goes on to say, "Member A is qualified, ready, willing, and able to be appointed to [the Board]. She meets all the nonracial requirements to be appointed to [the Board]. Neither Member A nor her spouse are engaged in the practice of real property appraising." (Doc. 1 at 5 ¶ 22.) Once more, both the Governor and Brokers Association "lack[] sufficient knowledge or information to admit or deny" the allegation and "thus den[y]" it. (Doc. 36 at 3 ¶ 22; doc. 55 at 4 ¶ 22.) Fourth and finally, the Alliance alleges, "Member A has submitted an application to the Governor to be appointed to [the Board]. But because of the racial quota in Ala. Code § 34-27A-4 and Ala. Admin. Code 780-X-1-.02, she in ineligible to be appointed to the currently vacant public member position." (Doc. 1 at 5 ¶ 23.) The Governor responds, "Admitted that—assuming Member A identified in the complaint is Laura Clark per [counsel for the Alliance's] separate disclosure to Governor Ivey's counsel—Member A submitted an application to be appointed to the public member position of the Board. Denied that she is or was ineligible to be appointed to the public member position because of the racial quota or her race. Otherwise denied." (Doc. 36 at 3 ¶ 23.) For its part, the Brokers Association again "lacks sufficient knowledge or information to admit or deny the allegations in [Paragraph 23], and therefore denies them." (Doc. 55 at 4 ¶ 23.)

Because both the Governor and Brokers Association denied factual allegations about Ms. Clark that are critical to the Alliance's standing (and therefore critical to the outcome of the case), they have disputed material facts. Judgment on the pleadings *must* be denied. *Perez*, 774 F.3d at 1335 (citation omitted).

The Alliance contends that there is no material dispute of fact on standing, even in light of the other parties' denials of the factual allegations, because the Court previously concluded the Alliance had standing when it ruled on the preliminary

7

injunction motion (*see* doc. 30). In the Alliance's view, the Court's previous decision on standing is now the "law of the case." (Doc. 69 at 2.) For starters, "[u]nder the law of the case doctrine, both the district court and appellate court are generally bound by a prior *appellate* decision of the same case." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005) (emphasis added). There has been no appellate decision in this case. But even if there were, standing is a jurisdictional question courts must examine throughout a case. *See United States v. Hays*, 515 U.S. 737, 742 (1995). As the proceedings progress and new information is gathered, facts of the case often change and the standards under which courts analyze the facts, and therefore standing, shift. When the Court decided standing before, it took as true "all of the well-pleaded allegations" in the Alliance's Complaint. (Doc. 30 at 5 (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).) The legal standard today is different because the Alliance moved for judgment on the pleadings, so the allegations in the Answers are taken as true and the Complaint is viewed in the light most favorable to the Governor and the Brokers Association. *See Perez*, 774 F.3d at 1335 (citation omitted). The factual record has further developed too with the addition of the Answers, pleadings the Court did not have when it ruled on standing last time. "The first exception to the [law of the case] doctrine recognizes that the law of the case is the law made on a given set of facts, not law yet to be made on different facts." *Jackson*, 405 F.3d at 1283. The facts and posture of the case have changed since the Court last analyzed standing, and the law of the case doctrine does not bind any here to the Court's previous ruling. *See Silva v. Baptist Health S. Fla., Inc.*, 838 F. App'x 376, 383 (11th Cir. 2020) (per curiam).

To be clear, the Court need not reexamine standing here. The Governor and Brokers Association are *not* entitled to judgment on the pleadings for lack of standing just because the Alliance has failed to clear the Rule 12(c) hurdles. The material dispute of facts on standing merely open the door to discovery at this point.

\*   \*   \*

The question presented in this case is simple but consequential. For court watchers or the opinion-reading public, the result of the Alliance's facial challenge to the Mandate seems clear-cut, at first glance anyway. Whatever Ms. Clark's and the Alliance's motivation for bringing this action—to remedy a true constitutional injury or to achieve some policy objective—they sought to grasp their unusual prize too soon, on nothing more than a bare-bones albeit plausible Complaint and a few pages of briefing. Far more sweat and elbow grease are required to obtain facial invalidation of a duly enacted statutory clause; one, counsel speculated, that appears in over two dozen other Alabama statutes relating to public appointments.

Make no mistake, the case proceeds to discovery based on a strict application of the technical Rule 12(c) legal standard; pursuit of judgment on the pleadings is a precarious business after all. Had the Alliance relied on a more robust Complaint, coupled with appropriate exhibits appended to its pleading, the case might well have been decided on the merits today. But the Court takes the pleadings as it finds them, so the Governor and Brokers Association now have the opportunity to give it their best shot at summary judgment or trial.

**B. The Inclusivity Requirement**

When the Alliance filed this action, it brought an equal protection challenge to both the Mandate and the Inclusivity Requirement. (Doc. 1 at 4.) The Inclusivity Requirement states, "The overall membership of the [B]oard shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state." Ala. Code § 34-27A-4; Ala. Admin. Code § 780-X-1-.02. The Alliance is now "willing to accept the Governor's interpretation [of the Inclusivity Requirement] and forgo its challenge to" it "[f]or purposes of securing a quick resolution of this matter[.]" (Doc. 56 at 1 n.1.) The Governor contends the Inclusivity Requirement is "hortative and unenforceable. Regardless, it does not

9

compel the appointment of any specific candidate or of any number of candidates on the basis of race and is thus not an unconstitutional racial quota." (Doc. 36 at 5.) The Brokers Association, for its part, argues the Alliance abandoned its challenge to the Inclusivity Requirement. (Doc. 66 at 2 n.2.) Later, during argument, counsel for the Alliance conceded that it has abandoned its challenge. Accordingly, the Alliance's challenge to the Inclusivity Requirement is no longer fit for resolution and will be dismissed. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## V. CONCLUSION

For these reasons, it is **ORDERED** that the American Alliance for Equal Rights' *Motion for Judgment on the Pleadings* (doc. 56) is **DENIED**. The Alliance's challenge to the clause of Alabama Code § 34-27A-4 and Alabama Administrative Code § 780-X-1-.02, which states that the "overall membership of the board shall be inclusive and reflect the racial, gender, geographic, urban/rural, and economic diversity of the state[,]" is **DISMISSED without prejudice**. The case will proceed to discovery concerning the Alliance's Article III standing and its facial challenge to the Mandate.

**DONE** on this the 17th day of July 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE